## HOLLISTER *vs.* BARKLEY.

Where an injunction has been obtained on the filing of a bill, it is a general rule, that on the coming in of an answer, denying all the equity of the bill, the injunction will be dissolved.

There may be exceptions to this rule, where, from the nature and circumstances of the case, the court in its discretion will continue the injunction.

But where the bill prayed an injunction against a suit at law, in which the defendant sought to recover of the plaintiff in equity the value of certain work and labor performed by the former, the bill alleging that such work and labor was performed for the benefit of a partnership, which existed between the parties, and ought to be taken into the partnership account; the answer having denied all the equity of the bill—*held*, that there was nothing in the

nature or circumstances of the case to take it out of the general rule ; as the effect of dissolving the injunction was merely to permit the controversy to be tried in the regular course.

IN CHANCERY. The bill stated that previous to the month of May, 1828, the plaintiff owned one undivided half of certain cloth-dressing and carding works, in Lisbon, with one Richard Gookin—that in said month the defendant purchased out the interest of Gookin, or his heirs, and the plaintiff and defendant entered into a copartnership, to carry on the cloth dressing and carding business—that said contract was not reduced to writing, but that the terms of it were, that the parties should each contribute one half of the expenses of carrying on said business, and divide equally the profits and loss—that said partnership continued, and was carried on, in pursuance of said agreement, till the month of November, 1828, when the works were destroyed by fire, with all the books of account and papers—that the plaintiff afterward collected from various individuals, indebted to said firm, the sum of $150, as near as he could recollect—that the principal duty of collecting debts and settling the accounts due said partnership devolved upon the defendant, who spent several days in making settlements and collections—and that defendant soon after informed plaintiff, that he had collected from the debts due such sum as, added to what plaintiff admitted he had collected, ($150,) would amount to $600, and upwards—that said sum of $150 is all that the plaintiff has ever received of said collections, and that the balance is still in the hands of the defendant, to be accounted for.

The bill further stated, that the parties agreed to rebuild said works, and each was to contribute one half towards all the expenses—that in pursuance of said agreement they did rebuild, and the works were so far completed as to be in a condition to operate in the month of September, 1829—that the accounts for expenses incurred in rebuilding were never settled and balanced between the parties—and that the plain-

tiff contributed towards the expenses of rebuilding, $200 more than defendant, one half of which belonged to defendant to pay.

The bill further alleged, that said partnership business was continued and carried on by the parties, until the spring of the year 1832, when a new contract of partnership was entered into between the parties, to continue for the term of one year, the terms of which were that plaintiff was to pay for one half of the dye-stuffs and repairs, and that the defendant was to pay the other half of the dye-stuffs and repairs, and all the other expenses of the works, and pay and account to the plaintiff for one fourth part of the earnings—that said agreement continued for one year, and that the plaintiff from that time until the month of March, 1835, carried on said business with the defendant under the partnership contract of September, 1829—when the partnership was dissolved—that the plaintiff had paid more than the defendant, exclusive of the $100 advanced on his account in rebuilding, a large sum, to wit., $140—that there are now outstanding against the partnership, debts to the amount of $140, of which the defendant refuses to pay any part—that the defendant had received and appropriated to his own use, of divers individuals indebted to the firm, a large sum more than his just share of the profits, the precise amount of which is unknown to the plaintiff, but he verily believes over $300—that there are debts due the partnership yet uncollected, some of which might be rendered available, but that the plaintiff is unable to settle and liquidate them, as the debtors claim to be allowed for sundry payments, which they allege they have made to the defendant, on account of the partnership, the amount of which, if made, the plaintiff has no means of determining ; and that the plaintiff has, at all times since the dissolution, been ready to adjust the concerns of said partnership with the defendant, and has repeatedly requested him so to do.

The bill then alleged that the defendant, at the term of

the court of common pleas in November 1836, instituted a suit at law, against the plaintiff, on a claim for the services of the defendant, in and about said partnership business—pretending that the plaintiff agreed to pay him for such services out of his individual property, and without reference to the earnings of the partnership—which is now pending; whereas the plaintiff charged the truth to be that the partnership agreement was as before stated, and that the claims of the defendant for his personal services stood on the same ground as those of the plaintiff, each being a proper charge against the firm, and not against either individually.

The defendant was particularly interrogated whether the partnership agreement was not, that each was to contribute one half of the expenses, and share equally the profits and loss of the concern? Whether it was not agreed that each should contribute equally to the expense of rebuilding said works, after they were destroyed by fire? Whether the plaintiff did not advance more towards rebuilding than the defendant, and how much? Whether the principal duty of settling and collecting the debts due at the time of the destruction of the works, did not devolve on the defendant, and whether he did not receive of the debts due before the fire, a larger sum, to wit., $450 and upwards? Whether the defendant did not, soon after such collections were made, inform the plaintiff that he had received of the debts such sum as, added to the $150 collected by the plaintiff, would amount to $600 and upwards? Whether the defendant did not keep an account of his personal services in the concern, and charge the same to the partnership? And whether the defendant has not received of sundry persons, (naming them,) large sums, on account of said partnership, of which he has rendered no account, and of what amount?

And it concluded with a prayer that an account might be taken of the partnership transactions, and of the monies received and paid by each, and that the defendant might be decreed to pay to the plaintiff what, if any thing, should

appear to be due him—the plaintiff being ready and offering to pay the defendant what, if any thing, should be due from the plaintiff, and that the defendant might be restrained, by injunction, from prosecuting his suit at law, and from collecting the partnership debts.

The defendant answered, that he believed that previous to May, 1828, the plaintiff owned one half of the works with Gookin, or his heirs—that in said month of May he became owner of the interest of Gookin—and in said month the parties entered into copartnership to carry on cloth dressing and carding—that the agreement of copartnership was not reduced to writing, but the terms of it were, that parties should each contribute one half of all the expenses of carrying on said business, and divide equally the profits—that the defendant should have the whole superintendance of the business, and labor in the business when necessary, and be paid for one half of his personal services, in the business, by the complainant, at all events, and whether said partnership realized any profits or not—that in all other respects the profits and losses should be equally divided—that the defendant entered upon and carried on the business under said agreement, until November, 1828, when the works, and books, and papers, were destroyed by fire—that said works were again erected by the parties, and the business carried on under the co-partnership agreement aforesaid, from June, 1829, to March 31, 1835, when the copartnership was finally dissolved, with the exception of the year 1832, during which business was carried on under an agreement hereafter stated—that for the business done previous to the destruction by fire the defendant had received $158, and no more—that the plaintiff, on the 28th of August, 1835, admitted that he had received $152.99—that the remaining charges on the books destroyed have been either received by the plaintiff, or received in the erection and completion of said works, or lost to the partnership—that it was not true

that the principal duty of collecting the debts, and settling the accounts, devolved on the defendant—that he never received, in any manner, out of the avails of the work done before the fire, more than said sum of $158, unless it was put into the buildings.

The answer denied that the defendant at any time informed plaintiff that he had collected from the debts such sum as, with what the plaintiff had collected ($150) would amount to $600 or upward—but alleged that in July, 1829, he said he had collected about $100, and brought forward the notes he had taken, and his minutes, and offered to divide and make all even—that plaintiff then said he had collected about the same amount, and it would do no good to bring forward his papers, &c., and divide—and that the defendant replied, if the plaintiff had collected no more than $100 the partnership would lose by the fire 5 or $600.

The answer denied that the defendant ever admitted that he had received, on account of the earnings before said fire, more than $174.55, and alleged that in point of fact this admission included a sum of $16.55 more than he received, having in fact received $158.

It further stated, that said parties did agree to erect said works—that each was to contribute one half—that on examination the plaintiff had advanced $188.80 more than the defendant—half of which belonged to the defendant to pay—but denied this was any part of the partnership agreement, but arose out of their common ownership.

The answer alleged that the business was carried on, except in 1832, under the original agreement, until the 31st of March, 1835—that on the 28th of August, 1835, the parties examined the books and papers, and found the amount of charges during said period, except for 1832, to be $7327.87—that of this sum the defendant had received $3132.38 and the plaintiff $3032.84—that there was uncollected $926.94, leaving $235.71 wholly unaccounted for on said books—that the plaintiff had at all times had the custody and gen-

eral control of said books—that the defendant called on the plaintiff, December 12, 1837, for the books, to enable him to make answer, and the plaintiff refused to deliver them, but next day delivered two, out of five or six—that from examination of those he had received the defendant had discovered many mistakes, and is satisfied he cannot depend on the books, nor safely answer as to sums except from a careful examination of all the books.

It was then stated that, in regard to the year 1832, the contract of copartnership was that the defendant should do all the labor, and pay for one half the dye-stuffs and repairs, and have three fourths of the profits—and the plaintiff should pay for one half the dye-stuffs and repairs, and share one fourth—that the defendant carried on under this contract from the spring of 1832, to the spring of 1833, and there was charged in the whole 1649.83—that August 28, 1835, it appeared that plaintiff had received $361.75, and defendant $1069.74, and that there remained uncollected $218.34, of which defendant had since received $17.85.

The answer alleged that the defendant had never refused to settle and adjust the concerns, but had been at all times ready, and had frequently called on plaintiff for such settlement, who had refused and neglected—that particularly on the 18th of March, 1837, he offered to settle, and offered to pay or secure plaintiff half the outstanding claims, if any, and to receive half the outstanding demands, and thus close the whole ; but the plaintiff refused.

The answer then stated that the defendant's action, now pending against the plaintiff, was founded upon the private and personal claim of the defendant, and not in whole or part upon claims on account of the partnership—but if the court should be of opinion that the personal services of the defendant, or any part of them, should be included in the partnership accounts, the defendant claimed to have the amount allowed him in the final settlement to be had by order of the court.

And in regard to his personal services, except for 1832, the defendant answered, that the credit of the establishment when he came in was not high—that the plaintiff was not a mechanic, or skilled in the business, and that defendant was—and that it was distinctly agreed, as part and parcel of said partnership agreement, that the plaintiff should pay the defendant one half of his personal services, at all events, whether any profits were realized or not—that the plaintiff paid the defendant for half of his services the first year, without objection—and that on examination of the books, in August, 1835, the plaintiff did not object to defendant's claim to be paid for half his services, but only that they were charged too high—that there never has been any change in the contract, except for the year 1832—that the defendant was fully justified by the contract to charge one half of his personal services to plaintiff—that he kept a memorandum of the work done in the shop by himself, in his private books, under the head of charges to Hollister & Barkley, which was kept in that form to distinguish it from other charges on other accounts against the plaintiff—but that said services were rendered, and charges made, under the contract aforesaid—and that for charges made in the same way in 1828 the plaintiff settled and paid without objection.

And the answer prayed that an account might be taken, and that the plaintiff might be decreed to pay to the defendant all, if any thing, which might appear to be due, &c.

Upon the filing of the bill the plaintiff obtained an injunction, as prayed for, restraining the defendant from proceeding in the suit at law, to recover for his personal services ; and, on the coming in of the answer, the defendant moved to dissolve the injunction.

*J. Smith,* and *Hutchins,* for the plaintiff.

*Bell,* and *Goodall & Woods,* for the defendant.

Hollister
*vs.*
Barkley.

PARKER, C. J.* The only question arising in this case, at this time, is on the motion of the defendant to dissolve the injunction.

The answer very distinctly alleges a personal contract by the plaintiff, to pay the defendant for one half of his personal services, at all events, whether any profits were realized by the partnership or not. If the statements of the answer are correct, the defendant has a just claim upon the plaintiff, personally, to that extent, and is entitled to maintain the action he has commenced; for those services, in such case, are not to be carried into the partnership account, but constituted a charge against the plaintiff, individually, on his personal promise. It is apparent, therefore, that so far as that suit is concerned, all the equity of the bill is denied by the answer; and the general principle is that in such case the injunction is to be dissolved. 2 *Maddock's Ch.* 366; 8 *Vesey* 35, *Clapham* vs. *White;* 9 *Ves.* 355, *Berkley* vs. *Brymer;* 19 *Ves.* 144, 153, *Norway* vs. *Rowe;* 1 *Johns. Ch. Rep.* 211, *Hoffman* vs. *Livingston; ditto* 444, *Eastburn* vs. *Kirk.*

There may be exceptions to this general rule—cases where the court, in its discretion, from the nature and circumstances of the case, will continue the injunction. 2 *Johns. Ch. Rep.* 202, 205, *Roberts* vs. *Anderson;* 3 *P. Williams R.* 255, *Gibbs* vs. *Cole, and cases cited in note;* 2 *Eq. Cas. Abr.* 14, *B.* 2. *S. C.;* 2 *Brown's Ch. Rep.* 88, *Strathmore* vs. *Bowes;* 3 *Brown* 463, *Isaacs* vs. *Humphage;* 1 *Ves., Jr.,* 427, *S. C.;* 16 *Ves.* 49, *Peacock* vs. *Peacock;* 19 *Ves.* 149, *note C;* 2 *Madd. Ch.* 366; 1 *Newland's Ch. Pr.* 227.

But there is nothing in the nature of this case to take it out of the general rule, and the dissolution of the injunction is a matter of course, on motion. The effect of dissolving it will only be to permit the defendant to proceed in the regular course with his suit at law, in which the burden of proof

---

* WILCOX, J., having been of counsel, did not sit.

will be on him to show a contract, by the plaintiff, such as is alleged in the answer, and in which the plaintiff will be at liberty to rebut any evidence of that character by showing, if he can, that he is not personally liable, but that the services for which the defendant makes his claim are properly chargeable to the partnership, as stated in his bill. The answer having denied all the equity of the bill, the plaintiff cannot be placed in a more favorable situation.

*Injunction dissolved.*

The case was subsequently, on motion, committed to a master, to state the partnership accounts.