EUGENE V. CONNETT et al.

*v.*

UNITED HATTERS OF NORTH AMERICA et al.

[Submitted June 30th, 1909.   Decided July 19th, 1909.]

1. A court cannot pretend to be ignorant of facts in relation to a strike of employes in a large city within its jurisdiction, which are common to the knowledge of every intelligent person within the county.

2. False statements in affidavits on behalf of defendant opposing a preliminary injunction must be held to weaken very much their evidence in other respects.

3. The undoubted principle of law that every man is bound by the consequences of his own acts applies to the acts of labor unions in ordering a strike and encouraging its continuance. and they must be held accountable for all the results that can properly be traced to their original action.

4. Acts of violence, intimidation, and coercion chargeable to local labor unions, consisting of assaults on employes by strikers and their sym-

pathizers, assembling of mobs of such persons resulting in riots, turbulent affrays in the streets, and the organization of a system of picketing, for the purpose of annoying employes not participating in the strike, are unlawful.

5. Unless bound by contract, employes may. singly or in a body, leave their employment whenever they choose, and for any reason, or for no reason at all, but when they go they have no right to interfere in the slightest degree with the efforts of the employer to fill their places; and, in like manner, the employer may discharge one or all of his employes, and, having done so, he cannot interfere in any degree with their efforts to obtain employment elsewhere.

6. The employer and employe have correlative rights which appear in our constitution in' the clause "among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness," and there is no law applicable to the one that does not apply to the other with equal force.

7. The action of local labor unions in calling meetings, and in the most public and formal manner expelling members refusing to join in a strike, without according them a hearing, where they were guilty of no moral turpitude, and where, according to the by-laws, they had already lost their membership, must be regarded, in passing on the right to an injunction against intimidation of employes desiring to work pending a strike, as action taken to stand *in terrorem* as to the remaining members.

8. Act of February 14th, 1883 (*P. L. 1883 p. 36*), providing "that it shall not be unlawful for any two or more persons to unite, combine or bind themselves by oath, covenant, agreement, alliance or otherwise to persuade, advise or encourage, by peaceable means, any person or persons to enter into any combination for or against leaving or entering the employment of any person, persons or corporation," has no relevancy to a civil suit to enjoin labor unions and their officers and members from unlawful acts intended to intimidate and interfere with the employes of complainants pending a strike.

9. Without proof that a national association of employes as a body encouraged the unlawful acts of local unions in connection with a strike ordered by them, injunction will not lie against it, but its president should be enjoined when, notwithstanding his public utterances against unlawful disturbances in connection therewith, he has encouraged the same, and is in fact in charge of the strike, and his utterances have also been at variance with those in which he counseled peace.

On motion for preliminary injunction.

*Messrs. Sommer, Colby & Whiting,* for the complainants.

*Mr. Samuel Kalisch* and *Mr. Edward M. Colie,* for the defendants.

HOWELL, V. C.

The complainants in this case comprise the firm of E. V. Connett & Company, hat manufacturers, doing business in Orange. The defendants are the United Hatters of North America and four local unions affiliated with it, all of which are unincorporated associations, and many individuals who are members of these locals.

The bill alleges that the members of these unions who were formerly employes of the complainants are on a strike, and that they and the unions to which they belong have been and are interfering with the conduct of the complainants' business, and are attempting to deprive them of the free flow of labor to their factory by unlawful means and by a series of unlawful acts.

These unlawful acts, as charged in the bill, consist of three classes, the general object of all three being the intimidation and coercion of workmen who would be and are willing to work for the complainants in the place and stead of the strikers. The classes of acts of intimidation and coercion complained of are— *first,* actual violence, including assaults, disorderly and turbulent conduct on the streets, the assembling of mobs of strikers and their sympathizers, and the destruction of property by the mobs; *second,* picketing, by which certain persons have been assigned by the local unions to watch the people who approach the complainants' factory for the purpose of procuring work, and assemble about the railway stations in Orange to make overtures to people who they think may be seeking employment from the complainants, and threatening them or attempting against their wishes to persuade them to refrain from entering the complainants' employ; *third,* the penalizing of members of the union who disregard the action of the local unions and either remain in or re-enter the employ of the complainants, the particular charge being that members of the union thereby lose their right of membership and may not be restored except upon the payment of some inordinate fine the amount of which is fixed by the unions in general meeting. These are claimed by the complainants to be unlawful and unjustifiable proceedings. They say that these acts have had the effect of intimidating persons from entering their employment and of coercing others to leave and remain out

of their employment, and they pray that the defendants may be enjoined from further acts of this character.

I may say at the outset that the situation is a very serious one and has been so since January 15th of this year, on which day the strike began. For six months the hatting district in Orange, and in some parts of Newark, have been in a state of continual uproar and riot. At times the mobs appear to have been entirely unmanageable by the ordinary peace officers of the city. This is common knowledge, and while it does not appear in the affidavits that an appeal was made to the sheriff of the county to assist the local authorities, or that the disturbance attracted the notice of the criminal courts of the county, or that the matter was investigated by the grand jury, it is nevertheless a fact which has come to the knowledge of every person of intelligence in the county and the court certainly could not pretend to be in ignorance of facts which are so universally known.

The complainants are large manufacturers; their normal number of employes is about seven hundred and fifty; they have employed in their business a very large amount of capital; their annual business amounts to over a million and a half of dollars, and their annual pay roll to upwards of $600,000.

The strike left them practically without employes. At the time of bringing of the suit they had succeeded in employing enough men to keep their factory running, but a large proportion of these employes were and are yet obliged to actually live in the factory and refrain from going on the streets in order to escape the violence with which they were and are threatened. The complainants have been obliged to transfer their hat trimming department to the city of New York, and they have been compelled further to protect their property from the assaults of mobs by employing a large number of private watchmen. In short, the situation is one which ought not to be tolerated in any civilized community and is one of the situations which is intended to be taken care of by the ordinary common-law methods. These acts of violence and disorder which are so fully testified to in the complainants' affidavits and which everybody of ordinary intelligence knows about, are denied by a large number of the affiants on behalf of the defendants. These affidavits, in so far

as they deny the acts of turbulence and rioting and other public affrays in the streets, are undoubtedly false. I must reject their statements on these points and do so with the remark that their evidence on other points, and in fact the whole of the defendants' case, is thereby very much weakened. It is inconceivable that the complainants and their witnesses should testify to such uniform and continuous course of outrage if there were not a foundation of fact for it.

I will first discuss the acts of violence which are charged against the defendants. On April 12th, 1909, a most brutal and almost murderous assault was made upon John Miller. He was rendered insensible and had to be carried to the hospital and was on the following day sent back to his home in Yonkers. This assault is traced to James Brennan, an Italian named Cappania and two other men, all of whom are identified as strikers or their sympathizers and some of them as members of one of the local hatters' unions. On March 15th, Michael Straub was assaulted by a member of the hatters' union near the Highland avenue railway station in Orange. On March 13th a somewhat similar assault was made upon Frank Straub. These assaults seem to have been unprovoked. To some extent they are denied, but the denials are not clear and convincing, and I am led to believe that the facts are as are stated in the affidavits of the three men who were assaulted. There could have been but one cause for it, viz., to intimidate these men, who were actually working for the complainants, and others who might desire to do so, and thus embarrass the complainants in their attempt to carry on their business. Another form of intimidation was that of shouting at the employes, calling them offensive names, following them about in large bodies. Stories of acts of this character are told by Frank Allen, Frank Baker, Walter H. Griffith and Franklin Doty, and similar stories of happenings at the railway station and on the railway are told by Mrs. McChesney and Mrs. Hennion.

As to picketing and thereby attempting to influence the employes of the complainants, it seems very clear that there was picketing and that some or all of the four local unions involved in the strike paid men for the purpose of performing this service.

It appears by the affidavit of Willis Glazier that an executive committee was appointed from Local 13, consisting of Charles Collin, Fred. Schmalz, Stringer White and Thomas Donavan, and from Local No. 14, Richard Lowe, Hugh Glover, James Byrne and Henry H. Jeffreys, to superintend the picketing. These men unite in an affidavit which is intended to deny the allegation on the part of the complainants in that behalf, but a reading of the affidavit shows that instead of a denial it is rather a confession of the fact charged against them. Their affidavit is a joint one, and I quote this from it as showing the sort of denial upon which they rely:

"I am a member of said executive committee and say that these charges and allegations are each and all of them false and untrue. The executive committee in question has been in existence for a number of years and was not specially appointed at the beginning of this strike or for the purpose named."

The four local unions which are affiliated with the United Hatters of North America which are implicated in this strike are known as Local No. 4, Local No. 13, Local No. 14 and Local No. 17. It is stated by the defendants' affidavits that the strike now in progress was not ordered or promoted by the national body, the United Hatters of North America, as is charged in the bill, but was ordered and fomented by these four local unions. From other circumstances in the papers I think that this is a statement of fact. It is an undoubted principle of law that every man is bound by the consequences of his own acts, and this rule applies to the case in hand. These four local unions having ordered the strike and having encouraged it by the payment of wages to individuals to carry it on, must be held accountable for all the results that can properly be traced to their original action. It was so held in *Franklin Union No. 4* v. *People, 220 Ill. 355; 77 N. E. Rep. 176.* The following is from the opinion: "It appears that the strike was inaugurated by Franklin Union No. 4, that it provided a place in which the strikers might congregate near the business place of the members of the Chicago Typothetæ; that it raised a fund by assessing members of the union that did not go out upon the strike; that the said fund was used

by it to maintain its members who did go out while they were engaged in the strike; that its regular committee actively sought to induce persons in the employ of the Chicago Typothetæ, or who sought employment from them, not to remain in their employ, or not to accept employment from them, and that many of its members are actually engaged in picketing and in the use of force and intimidation against the employes of the association or persons seeking employment from them. It is clear that the violence, force, threats, intimidation and coercion which immediately followed the inauguration of the strike ⁕ ⁕ ⁕ was the direct result of the action of Franklin Union No. 4 ⁕ ⁕ ⁕ and the results which followed were those which Franklin Union No. 4 and its officers are bound in law to know would likely follow their action in inaugurating and carrying on what counsel characterized as an industrial war, and Franklin Union No. 4 having set in motion the affairs which produced the results pointed out cannot excuse itself for the part it took in the conspiracy by the statement of its officers that they advised the members of the union to be orderly and obey the law." Similar language was used by the United States circuit court for the western district of Tennessee in *Southern Railway Co.* v. *Machinists' Local No. 14, 111 Fed. Rep. 49,* and in *Union Pacific Railroad Co.* v. *Ruef, 120 Fed. Rep. 102,* and in the opinion of Vice-Chancellor Bergen in *Jonas Glass Co.* v. *United Glass Blowers Association, 72 N. J. Eq. (2 Buch.) 653.* I therefore feel bound to charge the four local unions with the acts of violence, intimidation and coercion complained of and of having organized a system of picketing for the purpose of annoying the complainants' employes. It does not need the citation of authorities to show that these acts are unlawful; they have been the subject of frequent adjudication in this state and elsewhere. Unless bound by contract, employes may singly or in a body leave their employment whenever they choose, and for any reason, or for no reason at all, but when they go they have no right to interfere in the slightest degree with the efforts of the employer to fill their places. In like manner the employer may discharge one or all of his employes, and having discharged them he has no right to interfere to any degree with their efforts to obtain employment

elsewhere.   The employer and the employe have correlative rights; they appear in our constitution in the clause

"among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness."

And there is no law applicable to the one that does not with equal force apply to the other.

There remains to be discussed the question which relates to the penalizing of members for disobeying the rules of the association and the imposition of fines, so called, for violation of the union rules.   This branch of the case was discussed by counsel for the defendants with great learning and ability, and in a most valuable brief they seem to have collected all the precedents bearing upon the subject; but when I come to a consideration of the case I find that I cannot decide the point that was so elaborately argued.   The fact complained of on this branch of the case is that one or more of the local unions have actually expelled members of the union for the professed cause that they did not join in the strike and so violated the commands of the union. The by-laws of the four local unions contain provisions relating to this subject which are substantially the same.   Taking the by-laws of Local No. 4 as an example, it appears in article four, section six, that

"Any journeyman who may have gone foul, or who may hereafter go foul in this district, shall make application as provided for in sec. 5 of art. 1, but in no case shall he receive a card for a less sum than thirty dollars cash, and no fine remitted unless by a unanimous consent of the Association."

It was stated in the argument, and in fact the argument proceeded upon the idea that any member of Local No. 4 who remained in or returned to the complainants' employment had gone "foul" and that he thereby *ipso facto* lost his membership in the union, and that it was necessary before he could be entitled to a union card again to make application for membership under article one, section five, which provides that

14

"applications for membership to this association shall be made in writing to the secretary, and the same be accompanied with a deposit of fifty dollars; the name of the applicant shall be placed on notice of regular meeting. All applications shall be referred to a committee of seven according to National law, who shall report at next regular meeting, and if applicant is rejected the deposit shall be returned."

I find nothing in these by-laws which gives to the association the right to impose any enormous fine upon an applicant for membership or for reinstatement, excepting in the by-laws of Local No. 13, which provides that if a journeyman shall go "foul" he may afterwards be admitted to membership by application to the vigilance committee and complying with their decision. I take it to be the law of each of these local associations that if a member goes "foul" he thereby *ipso facto* loses his membership and that no action by the association is necessary to cut him off from the benefits of the union.

In this case the local went far beyond what was required in order to relieve the union of the incubus of recalcitrant members. They appear to have called a meeting or meetings of the association and then and there, in the most public and formal manner, expelled certain members who were guilty of disobedience to the decrees of the union. These men who were so formally and publicly expelled had, according to all the theories of the defendants prior to that time, lost their membership, and hence it was unnecessary to take any action whatever. Of course, there is but one conclusion to be drawn from such conduct. It was done for the purpose of exhibiting to the other members the penal effect of remaining peaceably in the employ of the complainants. I do not discuss the right of the union under ordinary circumstances to expel its members if its rules and regulations are violated, but here the circumstances are extraordinary. The expelled members were guilty of no moral turpitude; there was no hearing accorded to them, and if the contention of the defendants is correct it was a useless form, but in the storm and stress of a strike it was undoubtedly expected that the action so taken would stand *in terrorem* as to the remaining members of the association.

I do not think that the act of 1883 (*P. L. 1883 p. 36*) has any relevancy to the facts in this case. If it is to receive the interpretation given to it by Vice-Chancellor Pitney in *Frank* v. *Herold, 63 N. J. Eq.* (*18 Dick.*) *443*, it does not affect a civil controversy at all. If it does apply to civil remedies it is taken wholly out of this case by the use of the phrase "by peaceable means," for, surely, no one can say that the acts of violence above referred to, for which I hold the local unions responsible, are peaceable.

I do not find in the affidavits any proof that the national association, as a body, engaged in encouraging the unlawful action of the local unions, and hence no injunction can run against that body. I do find, however, that John A. Moffitt, the president of the association, notwithstanding his public utterances against disturbances, has encouraged the same, and, in fact, is in charge of the strike. His utterances on February 12th are entirely inconsistent with those in which he counsels peace and are sufficient in my opinion to make him liable to be enjoined.

I will therefore advise an injunction against John A. Moffitt, the four local unions above mentioned and those of the defendants who are members thereof and who have been served with the order to show cause herein, and also against those defendants who have been served who have made no denial of the allegations against them. The writ should operate as a restraint upon these classes of defendants to prevent them from further commission of the unlawful acts hereinabove mentioned.