BENJAMIN ATKINS et al.

*v.*

W. A. FLETCHER COMPANY et al.

[Filed January 29th, 1904.]

1. A bill alleged that the complainants, forty-six in number, were machinists, recently employed by defendant company, but were on strike; that the complainants, with other machinists, had formed a voluntary association to better the condition of machinists in general; that defendant company and others, individuals and corporations, had formed a voluntary association for the purpose of dealing with labor troubles affecting the metal trades in New York harbor; that, in order to carry out the design of the machinists' association, the complainants had endeavored to obtain machinists to join them, and had maintained a system of quiet picketing in the streets near the machine shops of the defendant company, and averred that defendants, in combination, were interfering, by intimidation, threats, violence, arrests, &c., with the pickets of complainants.—*Held*, that the complainants were before the court as employers, and not as employees, though the bill also averred that defendants had conspired to compel complainants to work for defendant company.

2. Employers have the right to combine to refuse employment to any kind or class of workmen just as fully as employes have the right. to combine to refuse to be employed by any employer employing men of whom they disapprove or conducting his business contrary to their views.

3. A bill presenting the complaint of a voluntary association composed of machinists, and organized for various purposes, including benevolent purposes, and alleging that the association had employed persons to perform the service of "picketing;" that complainants had been so employed, but that most of them had been compelled to give up the work because of the insults, violence, unlawful arrests, &c., to which they were subjected by defendants, could not be deemed as averring grievances of the "pickets" themselves, but merely regarded as grievances of the association itself.

4. The mere fact that defendants, in combination, by means of intimidation or criminal violence, interfere with the free flow of labor to an employer, does not give the employer the right to equitable relief, in the absence of his showing that his remedy at law is inadequate.

5. Equity does not undertake to grant injunction in strike or boycott cases unless complainant has shown substantial pecuniary loss in

respect to his property and business for which an action at law was an inadequate remedy, or where he has shown that he had been deprived of his right to make a living.

6. The right of a voluntary association, engaged in supporting a strike, to freedom in the labor market, so that the association can readily employ pickets and other agents in carrying on its industrial warfare, is not a proper subject of protection by means of an injunction.

Motion for a preliminary injunction. On bill and affidavits and answering affidavits.

*Mr. William Hughes* and *Mr. James G. Blauvelt,* for the motion.

*Mr. Edward Russ* and *Mr. Francis Scott, contra.*

STEVENSON, V. C. (orally).

My conclusion is that no proper case is presented for an injunction, certainly not for a preliminary injunction.

I indicated to counsel during the argument, or at its close, several of the principal objections, which seemed to me to lie in the way of granting to the complainants the preliminary injunctive relief for which they apply. The case is a somewhat novel one. It may be that a little later I shall file a written opinion. I certainly shall do so in case of an appeal. At present I shall not undertake to discuss at great length all the reasons, some of which I cannot now recall, which led me, after going over the case very carefully, to the conclusion that a preliminary injunction would not be justified by the case now before this court.

It seems to me, however, in view of the wide scope of the argument and the various aspects in which the complainants' bill was viewed and exhibited by counsel, and the various kinds of grievances of all or some of the complainants which have been the subject of discussion, that it is important to explain what I regard as the correct analysis of the case now presented for judicial determination.

The complainants, forty-six in number, are machinists, recently employed by the defendant corporation, W. & A. Fletcher Company, but now on a strike. The complainants, "with cer-

Atkins *v.* Fletcher Co.

tain other machinists, have formed a voluntary association for the purpose of bettering the condition of machinists in general and the members of such association in particular," which voluntary association is known as the International Association of Machinists. The bill sets forth that the defendants, the W. & A. Fletcher Company and some thirty or forty individuals, partners and corporations, who are named, "have formed a voluntary association known as the New York Metal Trades Association," which is organized for the purpose of dealing with labor difficulties affecting the metal trades in New York harbor. It further appears from the bill and accompanying affidavits that, "in order to carry out the design" of the International Association of Machinists, the complainants "have endeavored to obtain as many machinists as possible to join them," and have maintained a system of quiet, peaceable picketing in the streets near the machine shops of the W. & A. Fletcher Company. All unlawful practices in connection with this picketing are denied, and the bill sets forth in detail various reasons why, for the accomplishment of the objects of the complainants in their voluntary association, the maintenance of pickets is lawful and proper, if not necessary. The grievance of which the complainants complain is that the defendants, acting in combination, are interfering by intimidation, threats, violence, arrests and other unlawful practices with the pickets of the complainants.

The complainants do not stand before the court as employes or persons seeking employment, whose natural expectation of obtaining work in machine shops is defeated because the defendants, by intimidation and molestation practiced upon the proprietors of the machine shops, constantly thwart them in their effort to get employment. In brief, the complainants stand before the court as employers and not as employes.

It is true that the bill alleges that the

"members of the New York Metal Trades Association have entered into a conspiracy to force and compel the complainants to work for the W. & A. Fletcher Company upon such terms as the W. & A. Fletcher Company may demand, and have conspired together for the purpose of preventing the complainants from earning a living at their trade as machinists, and that they are carrying out and effectuating the said conspiracy, and that they have discharged such of the complainants

as have received employment from any of the members of such association as soon as they ascertained that the complainants were former employes of the Fletcher shops, and the only reason assigned was that the complainants are former employes at Fletchers', on strike."

This allegation of the bill seems to be based upon the erroneous idea that employers have not the right to, combine freely to refuse employment to any kind or class of workmen precisely as employes have a right to combine freely to refuse to be employed by any employer who sees fit to employ workmen of whom they disapprove, or sees fit in any respect to conduct his business contrary to their views. But, apart from this consideration, the bill is not filed by the particular machinists who thus have been discharged to restrain defendants, acting in combination, from unlawful conduct which has secured their discharge, and now stands in the way of their being employed by persons who, if left free, would be willing to give them work. The discharge of some of the complainants, whether procured lawfully or unlawfully, is not to be regarded, under the allegations of this bill, as a grievance of the particular workmen who have been so discharged. It must be regarded solely as a grievance on the part of the forty-six complainants, as constituting the International Association of Machinists, and in their capacity as employers of labor, if such discharge can constitute a grievance of said association.

It also appears from the bill and affidavits that the International Association of Machinists have employed some of the complainants at a daily wage to do certain services which evidently may be all deemed embraced in the word "picketing," and that

"many of the complainants have been so employed during said strike, and that they or most of them have been compelled to give up such employment by reason of the annoyance, insults, violence, force, intimidation, threats, unlawful arrests and malicious prosecutions to which they were subjected by the Fletcher Company and the New York Metal Trades Association and their employes," &c.

Here, again, we have a charge of unlawful conduct on the part of the defendants which has caused some of the complain-

ants to be deprived of what is claimed to be a lawful employment, by which they may be said to be earning their living at a daily wage. But this bill is not filed by the complainants as pickets, as persons employed in a certain business whose opportunities for employment are cut off by the alleged unlawful conspiracy of the defendants. The interference with the work of the pickets must be regarded, in this case, as an alleged grievance of the International Association of Machinists.

This bill presents the complaint of this voluntary association as a partnership, engaged in the accomplishment of certain objects, many of which are benevolent. Any intimidation or other interference with the pickets employed by the association may be regarded as a possible grievance of the association, but cannot be regarded in this suit as a grievance of the pickets themselves. It will be time enough to consider any such grievance of the pickets when the pickets file their bill or bills for relief.

No question has been raised as to the capacity of the forty-six machinists to file this bill on behalf of the entire voluntary association known as the International Association of Machinists, although the argument on both sides assumed that this international association embraces large numbers of machinists throughout various states of the union. Confusion no doubt has resulted in the argument of this motion, from the fact that forty-six of a large number of partners or voluntary associates file a bill apparently for the protection of the right of the entire partnership or association to employ labor and to enjoy a free labor market, while the same bill sets up what might be deemed as separate causes of action in equity on the part of different sets of these forty-six complainants seeking employment in their trade as machinists, or seeking employment in the business of picketing for a daily wage. All the allegations of this bill, although they may contain a large number of separate causes of action in equity on behalf of employes of one kind or another, whose right to make a living has been interfered with, must be considered solely with reference to the capacity in which the forty-six complainants stand before the court, and the com-

plaint which they make in such capacity. As I have said, the complainants stand before the court as employers of labor, and their grievance is that the defendants, acting in combination, are unlawfully interfering with the right of the complainants as such employers of labor to have labor flow freely to them. *Jersey City Printing Co.* v. *Cassidy, 18 Dick. Ch. Rep. 759; 53 Atl. Rep. 230.*

The mere statement of the nature of the complainants' case—the only case, as this bill is framed, which I think the court can now take cognizance of—indicates the fatal objection to granting in such case the remedy of injunction.

The mere fact that defendants, in combination, by molestation and intimidation, or by criminal violence, interfere with the free flow of labor to an employer, does not necessarily give such employer the right to come into a court of equity and procure an injunction for his protection. The employer (complainant) must show, not only that the conduct of the defendants in combination unlawfully obstructs him, the complainant, in enjoying his natural expectancy in respect of the labor market, but that the natural and proximate result of the unlawful conduct complained of will be to inflict upon him, the employer, substantial money damages, for which the remedy at law is inadequate. The injunction, at the instance of an employer, in these strike cases, was forced out of courts of equity because the situation presented was one where, without injunctive relief, ruinous losses to the complainant would be inevitable. Railroads and large plants of machinery were paralyzed, aggregations of capital lay idle, while the persons acting in combination, who, by their interference with the free labor market, had caused and were continuing this great pecuniary loss, were themselves irresponsible pecuniarily. It is to this class of cases, in my judgment, that the strike injunction should, under present social and business conditions, as far as possible, be confined. Courts of equity should be cautious in undertaking to regulate by injunction the annoying conduct of a combination of individuals at the instance of complainants, whose only complaint is that their political, social or religious activities are interfered with. or

their amusements curtailed. The elemental right of the employer of labor which the courts recognize to-day no doubt is the right to employ, while the corresponding right of the workman is the right to be employed. In other words, the right to buy labor and the right to sell labor are recognized by the law, and their enjoyment is greatly impaired or destroyed unless freedom in the labor market—freedom on both sides of the labor market—is maintained. Each party to a contract for the sale of labor has an interest in the freedom of the other party with respect to making the contract. But I know of no case where a court of equity has recognized this right and protected it by means of an injunction where the violation, or the continued violation, of the right would not result in irreparable damage of a substantial character, for which the remedy at law by an action for damages would be inadequate.

It is not every person who wishes to hire a servant or engage an agent for any one of the innumerable purposes for which servants and agents are employed who can come into a court of equity and obtain an injunction for the protection of his right to employ, and for the removal of obstacles in the way of its exercise. At the present stage of the development of strike and boycott law there are innumerable situations in which one desiring to enjoy the right to employ or the right to be employed would not be allowed an injunction for his protection, because, while his social, moral, or even legal right may have been violated, the damage is not of a kind or nature to justify interference on his behalf by a court of equity. I do not know that courts of equity have as yet undertaken to grant injunctions in strike or boycott cases unless the complainant has shown substantial pecuniary loss in respect of his property, including his business, for which an action at law was an inadequate remedy or where he has shown that the conduct complained of deprived him of his opportunity to make a living—deprived him of the means of a livelihood.

In the present case the complainants composing, or at least representing, the International Association of Machinists, do not claim that they are suffering any substantial money loss

from the alleged unlawful interference of the defendants with the complainants' pickets. This association apparently has little, if any, capital invested in any way, and it does not appear to be conducting any trade or business of any kind. Its objects are not to make gain for its members as partners in business, using and seeking to acquire property. Its objects are largely benevolent. It is true that among its objects, as set forth in the bill of complaint, and therein declared to be the business of the association, is to "provide financial assistance to members attaining the age of sixty-five years and upwards, and to provide death benefits to all members in good standing for more than six months," but it does not appear that the association has actually established such a pension and death benefit system, nor does it appear that any conduct of the defendants complained of has interfered with the operation and maintenance of such a system. The business of the association which is alleged to have been interfered with is rendering assistance to workmen in the successful maintenance of a strike.

If benevolent operations are entitled to the same protection by injunctions against combinations with a view to the preservation of a free labor market for their benefit, it might be argued with some force that before an injunction should issue in this case the proofs ought to show that the cause of the employes is just—the merits of the strike ought to be passed upon and determined. This would be strange work, indeed, for the court of chancery to undertake to do.

The right of partners or voluntary associates who are engaged in supporting a strike to freedom in the labor market, so that they can readily employ pickets and other agents in carrying on their side of the industrial war, has certainly never been recognized by a court of equity as a proper subject of protection by means of an injunction. No such right, on the other hand, has been recognized and protected for the benefit of persons engaged in resisting a strike. If the New York Metal Trades Association, with its large and powerful combination of employing partners, corporations and individuals, should file a bill against the complainants to secure an injunction, protect-

ing them, the Metal Trades Association, in employing detectives, agents and pickets to assist the W. & A. Fletcher Company in this contest with its employes on strike, it seems to me the case would present the same fatal defect which is exhibited in this present case. What a court of equity will protect by an injunction in a proper case are the rights of the two parties directly interested in this conflict—W. & A. Fletcher Company and their employes—the right of the one to employ and the right of the other to be employed; the right of both to have a free labor market upon which an opportunity to make money and to make a living depends. If the New York Metal Trades Association—this powerful combination of employers—should undertake to deprive the complainants, as machinists, as workmen seeking to sell their labor, of all opportunities for employment other than by the Fletcher company, and in carrying out this purpose should molest and intimidate, or in various ways annoy or injure the proprietors of machine shops who otherwise would be willing to employ the complainants, then, it seems to me, the complainants would be entitled to an injunction from a court of equity under principles which are now well settled, unless the more or less definite amount of the damages suffered by the complainants and the pecuniary responsibility of the defendants would relegate the complainants to a court of law for their remedy. On this point, however, it is not necessary to express any opinion in this case.

In connection with the consideration of the principle that an injunction is issued in strike cases only where the remedy at law is inadequate, it is important to note that the complainants present no proof whatever that the defendants, or at least the principal defendants, are insolvent. On the contrary, the affidavits on behalf of the W. & A. Fletcher Company stand uncontradicted to the effect that that company is entirely solvent and able to discharge all pecuniary obligations which may be placed upon it.

I do not want either party to this case to understand that I have undertaken to lay down with accuracy the entire strike law applicable to this present case or suggested by it. The

primary rights which are violated by strikes and boycotts, and the remedial rights which thereby arise, are far from a condition of complete development or accurate definition. The law of this whole subject is to a large extent unsettled and involved in dispute and difference of opinion among judges and text-writers. In this condition of the law it is certainly safe to hold that in a novel case like this a preliminary injunction, at least, ought not to be issued, where the complainants do not show any substantial pecuniary damage, and it appears that the defendants, or some of them, are amply responsible for any money damages which may be recovered against them in an action at law.

It must be borne in mind that the damages to the pickets which have been caused by their wrongful exclusion from employment are to be sharply distinguished from any damages which the complainants may have suffered on that account. It does not satisfactorily appear in this case that any department of benevolent effort, or any lawful business of the complainants in which these pickets were employed, has been impaired in efficiency or suffered actual pecuniary loss by reason of the alleged outrages to which the pickets have been subjected, or by reason of the driving of the pickets from their posts.

If an injunction should issue in this case, it seems to me it would have to be based upon a principle far broader than any which has yet been laid down in any reported case—a principle as broad as this: That a court of equity will protect, by an injunction, the right of every man to enjoy a free labor market, the right of every employer to have labor flow freely to him, and the right of every employe to have employers left free to give him work—without reference to whether the invasion of the right complained of causes great damages or trifling damages; damages readily measured in money, or damages difficult of exact ascertainment; damages for which a judgment could be collected, or damages for which a judgment would be wholly uncollectible.

I shall advise that the motion for a preliminary injunction be denied, with costs.