BIJUR MOTOR APPLIANCE COMPANY

*v.*

INTERNATIONAL ASSOCIATION OF MACHINISTS, DISTRICT No. 15, et al.

[Decided September 21st, 1920.]

1. *Quære*—In punitive contempt proceedings, does an appeal lie from order of adjudication and for punishment?

2. If such appeal does lie, the filing of notice of appeal suspends the force and operation of the decree pending the appeal, and respondents are entitled to stay of execution, or—if serving of sentence has already been begun—to temporary release.

3. Order for release pending appeal granted—the serving of sentence having been commenced, respondents' claim of right of appeal not being frivolous or sham, application to the court of errors and appeals being impossible until a later date, and application to this court having been made properly.

———

In the matter of the alleged contempt of Albert Thorry et al.

On proceedings to punish for contempt.  On application for stay, &c.

*Mr. Mark A. Sullivan,* for the motion.

*Mr. Merritt Lane, contra.*

BUCHANAN, V. C.

Albert Thorry, Vincent Giamona (Gramona), George Miller, William Murray, Stephen Rethmann, Samuel Peterson, Abraham Ebert, Louis Mangold and Patrick Musto were, by order and decree of this court on August 31st, 1920, adjudged guilty of contempt of court for violation of an interim restraining order, and punishment of three months' imprisonment in the Mercer county jail and a fine of $50 was imposed upon each of them.  Warrants were immediately issued and the respondents committed thereunder.

The respondents have now filed in this court a notice of appeal from the said order and decree to the court of errors and appeals, and application is made by them to this court for an order staying the further enforcement of execution of the decree and releasing them from the custody of the sheriff, pending the determination of the appeal.

It is contended by counsel for the respondents that they have the right of appeal, and that the case is one where under the law the appeal should stay enforcement of the decree, and that therefore the order for release from custody, requisite for effectuating such stay, should be made as of course.

The distinction between the two classes of contempt proceedings—the so-called civil or remedial contempts, on the one hand, and the so-called criminal or punitive contempts, on the other—has been frequently pointed out.  *Staley* v. *South Jersey Realty Co., 83 N. J. Eq. 300* (at *p. 303*).  The proceeding resulting in the decree now appealed from was not for the purpose of affording relief *inter partes,* but of the punitive or criminal class.  Prior to 1909 no appeal lay from a decree of adjudication of contempt and for punishment, in this latter class of

contempt proceedings, except (perhaps) for lack of jurisdiction. The decree was not reviewable on the merits. *Dodd* v. *Una, 40 N. J. Eq. 722; Grand Lodge, K. of P.,* v. *Jansen, 62 N. J. Eq. 737* (at *p. 740*) ; *Frank* v. *Herold, 64 N. J. Eq. 371* (at *p. 372*) ; *Seastream* v. *New Jersey Exhibition Co., 72 N. J. Eq. 377.*

Punitive or criminal contempt proceedings are themselves subject to further classification. There are direct contempts, or contempts in *facie curiæ*, and indirect or consequential contempts. As is pointed out in *Re Merrill, 88 N. J. Eq. 261* (at *p. 275*), direct contempts are not necessarily committed in the actual presence of the court. It is patent that there may be just as flagrant acts of direct contempt away from the presence of the court as in the court room. However, there is an actual physical distinction between acts committed in the presence of the court and those committed elsewhere, and this distinction was made by the legislature in the statute (*P. L. 1909 p. 270*), by the provisions whereof, an appeal is given from decrees in contempt proceedings, in those cases where the proceeding is punitive, and where the alleged contempt was committed elsewhere than in the presence of the court.

The contempt in the case now under consideration comes within the purview of this statute, and therefore the respondents have the right of appeal, unless the statute is unconstitutional and therefore invalid.

Assuming, in the first place, that the act be valid, it seems clear that the case is, indeed, one where the taking of the appeal should stay the enforcement of the decree.

The law of this state is that when an appeal is taken from a decree in chancery, the act of filing the appeal suspends the force and operation of the decree appealed from, whenever and to the extent that it be necessary for the preservation of the subject of the appeal in such condition as is requisite for the rendering of an efficacious appellate decree. *Pennsylvania Railroad Co.* v. *National Docks Railway Co., 54 N. J. Eq. 647; Robinson* v. *Robinson, 86 N. J. Eq. 165.*

Certainly, in the present case, the actual incarceration and serving of the sentence by the respondents is a very essential

part of the subject of the appeal. If the serving of the sentence be not suspended, then by the time the appeal be heard and determined practically the entire sentence will have been served; the subject of the appeal, or the most important part thereof, will have been destroyed, and it will be impossible for the appellate court "to render an efficacious decree in the premises" if the appeal result in reversal, for by no human ingenuity can the imprisonment be obliterated from the lives of the respondents, or the *status quo ante* be restored. In *Robinson* v. *Robinson, supra,* the appeal was from a decree for permanent alimony, and it was pointed out that each installment of alimony paid pending the appeal, would be in execution *pro tanto* of the decree, and to that extent an impairment of the subject of the appeal. So, likewise, in the present case, each day of the sentence served, would be an impairment *pro tanto* of the subject of the appeal.

It cannot be doubted, therefore, that if the warrants of commitment had not been issued at the time the appeal was taken, the issuance thereof would have been stayed by the filing of the notice of appeal. The warrants, however, having issued, and the respondents having been committed and in the custody of the sheriff thereunder, affirmative action is required, in the nature of an order directing the sheriff to release them from custody pending the appeal, to effectuate the stay to which they are entitled in order to preserve the subject of the appeal. That such an order should be made, if this court has the power to make it after the filing of the appeal, is clear from what has already been said. That this court has the power to make such an order I think is beyond question. See *Robinson* v. *Robinson, supra; Ashby* v. *Yetter, 78 N. J. Eq. 173,* and cases cited.

It is suggested that the appeal which has been taken is in fact frivolous, and that for that reason the application should be denied, in line with *McMichael* v. *Barefoot, 85 N. J. Eq. 139.* It is true that the jurisdiction of this court to try alleged contempts against it is unquestionable, and that the respondents were served with process, appeared personally in court, had the opportunity to cross-examine the witnesses and rebut the proofs which were made in open court (of which they declined to avail

themselves) and stated that they did not deny that which had been charged and testified to against them. Nevertheless, not only the law and practice as to injunctive proceedings in strike cases (for issues in this category may be involved in the appeal if the right of appeal on the merits does exist), but also as to proceedings in contempt, have in recent years undergone considerable development, so that it cannot be said with certainty that they are as yet completely and definitely settled. I take it that a court of equity, particularly, should hesitate to denounce any proceeding as sham and frivolous unless the fact of its being of that character be open to no question. When it is further borne in mind that in cases of this kind the trial of the contempt is by the same judicial officer before whom was held the hearing resulting in the decree alleged to have been contemned, so that the adjudication of jurisdiction, and of the issues of fact and law in the original case, and the propriety and validity of the decree made therein, and also the adjudication of the issues of fact and law in the contempt proceedings, all rest upon and in the determination of a single judge, such judge may well, indeed, be reluctant to say in any given case that an appeal therefrom is absolutely without merit.

It will be remembered that the discussion thus far has been on the assumption that the statute of 1909 purporting to give respondents their right to the present appeal is valid and constitutional. It may be said that there is at least grave doubt as to its constitutionality. As has been said, prior to the passage of that enactment, decrees in contempt proceedings were absolutely final and not reviewable on the merits. The reason and necessity for this is shown in the cases collected and referred to by counsel in *Dodd* v. *Una, 40 N. J. Eq. 672* (at *p. 687*), *et seq.*

In *Flanigan* v. *Guggenheim Smelting Co., 63 N. J. Law 647*, the court of errors and appeals dealt with a statute purporting, in substance, to give to the appellate court the right to review the judgments of the supreme court in respect to questions as to the verdict being against the weight of evidence, and as to damages being excessive. It was held that the final and nonreviewable character of the judgments of the supreme court in

these respects was a vital quality of such judgments; that the right and power to render judgments (in these respects) of that character inhered in the supreme court at the adoption of the constitution and the continuance of such right was guaranteed by the constitution; and, hence, that the statute purporting to give the right of review, impaired the jurisdiction of the supreme court, violated the constitutional guaranty and was therefore invalid.

The case *sub judice* seems to be quite analogous, and if I deemed it necessary or advisable to decide the question, I might well feel justified in holding the statute of 1909 unconstitutional and invalid. Here, again, however, the question is by no means free from doubt, and it cannot be said that on this ground either the appeal is frivolous and sham, for, in *Slaley* v. *South Jersey Realty Co., supra,* an appeal from an order of this court, adjudicating and punishing a criminal contempt, was entertained and decided by the court of errors and appeals, under the authority of the statute in question. (It must be said, however, that the question of constitutionality was not raised in that case.) Moreover, notwithstanding the language of the opinion of Mr. Justice Depue in *Dodd* v. *Una, supra,* that in contempt proceedings, purely punitive, no appeal lies therefrom by either party (the cases cited by counsel and approved by Mr. Justice Depue apparently holding that a review on the ground of lack of jurisdiction must be by *habeas corpus* and not by appeal), it must be noted that that opinion was a minority opinion, the majority opinion expressly refraining from any pronouncement upon that point; the express and unanimous decision of the same court in *Grand Lodge, K. of P.,* v. *Jansen, supra* (at *p. 740*), that the punitive portion of the order there appealed from was not appealable and could not be considered, has the possibly significant qualification, that the order was within this court's jurisdiction; and the language of the unanimous opinion of the court of errors and appeals in *Seastream* v. *New Jersey Exhibition Co., supra,* that a punitive contempt proceeding "is not reviewable by an *appellate tribunal* [the italics are mine] except for the lack of jurisdiction in the court in which the proceeding

is had," is somewhat of an intimation that the proceeding may be reviewed by appeal, on the question of lack of jurisdiction. There is nothing in the present case to show upon what ground the appeal is taken—the notice of appeal, of course, does not state the ground of appeal. The question of jurisdiction was not raised in the proceedings in this court, but that does not preclude its being raised on the appeal. *Dodd* v. *Una, supra* (at *p. 713*). Again, there is in *Frank* v. *Herald, supra* (at *p. 37*) (a pronouncement of the court of errors and appeals subsequent to that in *Flanagan* v. *Guggenheim Smelting Co., supra*), an intimation of the possibility of doubt that the powers of this court are not subject to abridgement by the legislature. Taking all this into consideration, therefore, it cannot be said that the lack of appeal in the respondents is beyond the possibility of reasonable argument.

Application for the order sought cannot be made to the court of errors and appeals until the next conference day of that court —approximately, a week hence.

In this situation, then, as long as there exists any doubt whatever, I think that a court of equity should give to these respondents the benefit of that doubt, and grant the order for release pending the determination of the appeal, thus avoiding any possibility of the erroneous incarceration of the respondents for even such a short period as would intervene before application for such release could be made to the court of errors and appeals.

Such an order will therefore be advised.