The complainant is engaged in the manufacture of woolen products, and employs at its mills, approximately, three thousand *Page 231 
hands. In the vicinity of its mills there are a number of others, owned and operated by other persons. During the month of January, 1926, a strike was declared affecting the employee in all of these mills except, it is said, the two owned and operated by the complainant. Upon the sworn representation that no strike existed among the complainant's employes, and further proof of illegal interference with such employes by those of the other mills who had gone on a strike, a most drastic and sweeping ad interim
restraint was imposed upon the strikers, and they were ordered to show cause why a preliminary injunction should not issue.
Upon the return of the order, exhaustive proofs were read in answer to the bill and verifying affidavaits and exhibits. It would be intolerable to set out at length and in detail all of the defendants' proofs as well as those annexed to the bill of complaint. It is abundantly clear to me that they establish three facts which are controlling for the purpose of this motion, and they are — (1) that many of the employes, in fact, by far the greater number employed in complainant's mill, were on strike at the time of the filing of the bill, and still are on strike; (2) that no acts of violence or intimidation have been proved to have been committed by the strikers, and (3) that the strikers have picketed the complainant's plants in large numbers, in some instances, I think, by as many as two thousand individuals at one time. Upon the first point, almost the only evidence submitted by the complainant of there being no strike at its mills is the affidavit of the complainant's personnel manager. It is true that about twenty men have sworn that they, or some of them, are employed by the complainant, but I strongly incline to believe that what the defendants say as to this fact is true, namely, that the affiants are a maintenance crew and not ordinary workmen. My conclusion as to the second point arises from the paucity of proofs submitted by the complainant to show physical violence or intimidation practiced by the strikers, in connection with the full and complete denials in the defendants' affidavits. It seems to me that corroboration of some of the alleged acts of violence might have been secured if they *Page 232 
were true. For example, Dorothy Knapp tells of an assault committed upon a woman named Mrs. Winters, and of being bitten upon her own hand severely by one of the assailants. Neither the affidavit of Mrs. Winters is produced nor that of anyone who attended to the serious injury the affiant sustained. Again, as was so earnestly pressed at the hearing, not one affidavit by a peace officer was submitted, and it is notorious that the sheriffs of two counties had charge of the situation, with many deputies and regular police officers. The remaining point is abundantly proved by exhibits annexed to the bill of complaint. One of the exhibits is a publication issued by the leaders of the strike, many of whom are defendants in this cause, and shows a picture of a long line of men and women having thereunder the title "Baby Leads Picket Line of 6,000." From these conclusions, it seems to me inevitable that a preliminary injunction should be allowed, but that there should be a material modification of the terms of the restraining order.
My understanding of the law in this state is drawn from the pronouncement of the court of errors and appeals in Keuffel Esser v. International Association Machinists, 93 N.J. Eq. 429.
I do not understand that anything therein said is in any way overruled or modified by the later case in that court, NewJersey Painting Co. v. Local, No. 26, c., 96 N.J. Eq. 632. In the later case the only pertinent portion thereof is that part which overrules so much of the opinion in Jonas Glass Co. v.Glass Bottle Blowers' Asso., 77 N.J. Eq. 219, with regard to the effect of an act entitled "An act relative to persons combining and encouraging other persons to combine." P.L. 1883p. 36. In the Keuffel Esser Case, the opinion of the chief-justice of the United States, in American Steel Foundries
v. Tri-City Central Trades Council, 257 U.S. 184, was adopted, and it was pointed out by Mr. Justice Swayze that the rights of employer and employe were discussed from the common law standpoint as well as under the so-called Clayton act. 6 Fed.Stat. Anno. (2d ed.) 141. Under these opinions, I take it, picketing in itself, for all its militant name, may be legal or illegal in a dispute between *Page 233 
employer and employe, according to the manner in which it is carried on. Of course, the time has passed when laboring men were forbidden to strike or to associate themselves together for the purpose of winning strikes initiated for bettering their living or working conditions, although it appears that as recently as 1867 these constituted indictable offenses. State v.Donaldson, 32 N.J. Law 151. Chief-Justice Taft (at pp. 208,210), in the opinion in the American Steel Foundries Case, says:
"Is interference of a labor organization by persuasion and appeal to induce a strike against low wages, under such circumstances, without lawful excuse and malicious? We think not. Labor unions are recognized by the Clayton act as legal when instituted for mutual help and lawfully carried out their legitimate objects. They have long been thus recognized by the courts. They were organized out of the necessities of the situation. A single employe was helpless in dealing with an employer. He was dependent, ordinarily, on his daily wage for the maintenance of himself and family. If the employer refused to pay him the wages that he thought fair, he was, nevertheless, unable to leave the employ and to resist arbitrary and unfair treatment. Union was essential to give laborers opportunity to deal on equality with their employer. They united to exert influence upon him and to leave him in a body, in order, by this inconvenience, to induce him to make better terms with them. They were withholding their labor of economic value to make him pay what they thought it was worth. The right to combine for such a lawful purpose has, in many years, not been denied by any court. The strike became a lawful instrument in a lawful economic struggle or competition between employer and employes as to the share or division between them of the joint product of labor and capital. To render this combination at all effective, employes must make their combination extend beyond one shop. It is helpful to have as many as may be in the same trade in the same community united, because, in the competition between employers, they are bound to be affected by the standard of wages of their trade in the neighborhood. Therefore, *Page 234 
they may use all lawful propaganda to enlarge their membership, and especially among those whose labor at lower wages will injure their whole guild. It is impossible to hold such persuasion and propaganda, without more, to be without excuse and malicious. The principle of the unlawfulness of maliciously enticing laborers still remains, and action may be maintained therefor in proper cases, but to make it applicable to local labor unions in such a case as this seems to us to be unreasonable."
With regard to picketing he says, on page 204:
"We are a social people, and the accosting by one of another in an inoffensive way, and an offer by one to communicate and discuss information, with a view to influencing the other's action, are not regarded as aggression or a violation of that other's rights."
If, however, this privilege is abused by violence, persistence against the other's wish, annoyance or otherwise, he points out, then the employer is entitled to have the striker enjoined from such illegal practice. This shows that it is the opinion of the supreme court of the United States and of the court of errors and appeals of this state that picketing, as such, may not amount to a trespass upon another's rights. To grant to labor the right to organize and strike, and deny it the right to picket in a labor market, such as the one in which the complainant's mills are located, would be similar to the legislature granting the right of suffrage to a citizen and then denying him the use of an official ballot upon which his choices would be required to be evidenced. Of course, in a place like Passaic county or Bergen county, in times of industrial depression, it would be idle for a substantial number of employes to strike for better wages, when by the very terms of this proposition the market would be glutted with others ready to take their employment. Under these circumstanaces, and so long as they do not resort to interdicted conduct, every dictate of reason and fair play requires that they should be given an opportunity to lawfully discuss their grievance, or supposed grievance, with either their fellow-employes or others who may offer themselves to take their places, unless, *Page 235 
indeed, labor is to be returned to that state of bondage that succeeded legal serfdom in England.
It is appreciated that many learned judges have declared that picketing in all forms, and by its very aims, objects and methods, is illegal and not to be permitted. But I think an examination of the authorities will disclose that this was no more than the personal opinion and judicial dictum of the judge who has so pronounced. For example, in Keuffel Esser v.International Association Machinists, supra, Judge White, in his concurring opinion, undoubtedly expresses this thought, but it is equally true that the opinion adopted by a majority of the members of the court did not agree with him. The opinion of the court says (at p. 431):
"Picketing may or may not be lawful, depending on whether or not it has an immediate tendency to intimidation of the other party to the controversy [to which we add `if he has ordinary firmness of mind'], or an immediate tendency to obstruct free passage such as the streets afford, consistent with the right of others to enjoy the same privilege."
Again, it is frequently said that where picketing is allowed, violence, intimidation and annoyances are practiced which it is impossible to prove. A less lawyer-like argument it would be difficult to evolve. To adopt such reasoning and apply it to other justiciable controversies would permit the destruction of all personal and property rights that are so jealously guarded by the law. It would amount to the power to punish without convicting. It would result in substituting the charge for the judgment. Not only is it ridiculous to urge such a rule of convenience where the most vital rights of laboring men are concerned, but its falsity is demonstrated by the many convictions that have resulted, such as those in Bijur MotorAppliance Co. v. International Association of Machinists,92 N.J. Eq. 183; affirmed in same volume (at p. 644).
Believing, as I do, that it is the legal right of employes to organize, to strike, and to attempt peacefully to persuade fellow-employee to do likewise, and to that end to picket in the manner indicated, the injunctive order will be so framed *Page 236 
only to prohibit picketing by the defendants or any others working under them, in a manner calculated to intimidate or unduly annoy others wishing to remain at their employment in the complainant's mills or reasonably likely to amount thereto. This, of course, will include an injunction to prevent picketing by groups sufficiently large in numbers to accomplish the illegal purposes just referred to. While this strike has been singularly free from acts of violence by the defendants and their sympathizers, it cannot be denied that they do not understand or willfully disregard their legal duties with regard to mass picketing. The controlling opinions in the Keuffel Esser Case,supra, and American Steel Foundries Case, supra, clearly lay down the rule. For example, in the former case the opinion of the court says:
"The number of pickets may, of itself, make the picketing unlawful, since it may amount to intimidation. Everyone knows that threats of bodily harm may be made by a mere show of force without violence of language or breach of the peace, and that mere numbers may intimidate."
Therefore, picketing, as heretofore carried on in this connection, will be enjoined, and I will hear counsel as to the form of the order in that respect.
It is argued with great force and apparent earnestness that the discretion of the court should not be exercised in the defendants' favor, because of the rule laid down in the case ofCitizens' Coach Co. v. Camden Horse Railroad Co., 29 N.J. Eq. 299,
declaring that where the complainant's proofs are fully and satisfactorily met by those of the defendants, no injunction will go in advance of the final hearing. The answer to this is, that so far as the illegal picketing by large numbers of strikers is concerned, I do not recall that it is even denied, and certainly there is no denial that would persuade any rational being, in view of the exhibits in the nature of declarations against interests. It is also said that under the case of Atkins v.Fletcher Co., 65 N.J. Eq. 658, turning on the necessity of a showing of irreparable injury even in a labor case, that the complainant's motion ought to be denied. It cannot be said that an irresponsible committee, not even *Page 237 
affiliated with any regular labor organization and a horde of employes attempting to support families on wages of $15 or $20 a week, could possibly respond to a judgment in an action at law.
The defendants also feel aggrieved by a combination of all the mill owners of the region into an association to which all applicants for employment were referred. It is said that there was kept by that association a record of all employes, and that when it was found from such records that the employment of a man would be unsatisfactory from the standpoint of the employers, he was effectually blacklisted by giving to him a card which he would be obliged to exhibit, before any of the associates would employ him, and upon which card there would appear a code number, indicative of undesirability. It is also charged that from this central body spies were sent out among the employes, even in time of peace, to secretly bring back confidential reports about the various individuals. From this it is argued that the complainant does not come into court with clean hands. It does not seem to me that this offends the maxim. Certainly, the employers have exactly the same right to organize and protect their interests that the law affords to the employes. In the minds of the defendants this appears to have been aggravated by the fact that the complainant had organized among its employes a sort of a governing and welfare body, at the same time retaining in its hands control of the affairs thereof, and that this was done for the purpose of forestalling any combination or affiliation with organized labor upon the part of the employes. I do not understand that it is illegal or in any other way offensive for an employer of labor to attempt to operate a shop with workmen who are not members of a trade union, and any such action upon the part of this complainant can have no bearing upon a determination of its right to be free from illegal actions upon the part of its employes who have refused to continue at their work.
I will advise an order in accordance with the views hereinabove set forth, but will require that notice thereof be given. *Page 238