**Hugh Capner v. The President and Directors of the Flemington Mining Company.**

If an injunction bill has been actually sworn to, the injunction will not be dismissed because the master has omitted to sign the jurat.

The operations of large companies should not be arrested by injunction, *without notice, except in very plain cases, or where there is a pressing necessity for immediate action.*[*]

A charge of waste, whereby the mortgage security is diminished, is always a sufficient ground for an injunction as between mortgagor and mortgagee.

Where a farm has been purchased, and is occupied for mining purposes, any necessary or proper use of the property in mining operations is not waste.

BILL by a mortgagee against the mortgagors, to restrain the commission of waste. On filing the bill an injunction was issued by order of a master, made exparte, and without notice to the defendants. The defendants, before answer, moved to dissolve the injunction as irregular. The cause was heard on the motion to dissolve.

*Saxton,* for defendants, in support of the motion.

*Wurts,* contra.

THE CHANCELLOR. In eighteen hundred and thirty-four, Capner sold his farm to the Mining Company for forty thousand dollars, payable in installments. Thirteen thousand five hundred dollars of this has been paid, in money and stock. An installment of eight thousand five hundred dollars fell due on the first of March, eighteen hundred and thirty-six; on the payment of which, and securing the balance by bond and mortgage on the premises, full possession of the whole property was to be delivered to the Company. Previous to this, Capner was to have the use of the farm for agricultural purposes, while the Company

---

* Accord. *Ross* v. *Elizabeth-Town and Somerville Railroad Company,* 1 *Green's Chan. R.* 422; *Perkins* v. *Collins,* post.

[Capner v. Flemington Mining Company.]

were at liberty to carry on their mining operations, open shafts and dig for ore, &c. as they might find advantageous. It was stipulated in the agreement between the parties, that in case the payment of eight thousand five hundred dollars, due on the first of March last, should not be made, that Capner, besides other remedies against the Company, should, by reason of the default, have all the remedies of a mortgagee against a mortgagor in this state for the mortgaged premises, upon non-payment according to the conditions of the mortgage, so far as they can be applied to enforce the payment thereof. The payment not being made, Capner filed a bill to foreclose all the rights and equities of the Company, and for possession; and also for an injunction to prevent the commission of waste. The injunction was ordered by a master, *exparte;* and it is now moved to set it aside as irregular, on several grounds.

1. The first is, that the bill was not properly verified.

The affidavit was drawn out at the foot of the bill in the usual way, and signed by the complainant, but the jurat was not signed by the master. Such an omission should not vitiate the injunction, if the bill was actually sworn to, as was the fact. It was an omission of the court, but one which could not affect the interests of the defendants. Perjury could have been assigned upon the affidavit if the facts were untrue.

2. The injunction, it is contended, was granted without notice, and therefore irregular.

There is no general rule on this subject; but the operations of large companies should not be suddenly stopped without an opportunity of being heard; and it has been usual for the court to cause notice to be given, except in very plain cases, or where there was a pressing necessity for immediate action. There is a discretion which the court must exercise in every case. If the operation of this injunction had been entirely to prevent the Company from working their mines, I should have been inclined to set it aside, on the ground that there was not a case of pressing necessity, and that the defendants were entitled to notice. But the injunction does not go that length. It does not prevent the

[Capner v. Flemington Mining Company.]

defendants from working in the shafts already opened, and cannot, therefore, be accompanied by any lasting or wide-spread injury, though it may occasion temporary embarrassment or inconvenience. I do not think proper to disturb the injunction on this ground.

3. It is contended that there is no equity in the bill to sustain the injunction.

There is waste charged, so as to diminish the complainant's security, and that is always a sufficient ground for an injunction as between mortgagor and mortgagee. I am of opinion, however, that there has been a misapprehension as to what constitutes waste under the facts of this case, and the peculiar situation of these parties.

This property was purchased and is occupied for mining purposes. This is evident from the price to be given, and all the covenants. So far as is necessary or proper for these purposes, the Company are in possession by permission not only, but of right, and any use of the property in mining operations cannot be considered as waste. It is not charged that they are using it ignorantly, or in such way as intentionally to injure the complainant without any benefit to themselves; nor is it pretended that the mines are wholly unproductive, or that the property is really valueless except for agricultural purposes, and that therefore, if the Company is permitted to go on *ad libitum*, excavating and searching for ore, that the property will be entirely lost to the complainant as a farm. The injunction does not rest on either of these grounds, and I am at a loss to conceive how the Company can commit waste and spoil, by using the property in the mode agreed on by the contract. Suppose the eight thousand five hundred dollars had been paid in March, and Capner had taken a mortgage for the balance of the purchase money, and it was not paid at the time stipulated, he might have filed a bill to foreclose the equity of redemption, but he could not have prevented the Company from using the property in their mining operations. Coming in here at this time as a mortgagee, he has no better rights.

[Capner v. Flemington Mining Company.]

The case of *Den* v. *Kinney*, 2 *South.* 552, is analagous to the present. The lessor of the plaintiff had covenanted to convey to the defendant a furnace property, and put him in possession. The purchase money not being paid, an ejectment was brought, and an application was made for a rule against the defendant to stay waste. It appeared that several hundred cords of wood had been cut, but the court said that as the use of the wood was for the common purposes of the estate, it was not waste; that the land being annexed to a furnace, it was only using it in the ordinary mode; and the rule was refused.

I am of opinion that in this case the injunction should be modified; that so far as it restrains the Company from opening new shafts and digging for metals or minerals at any other point or place than where they were engaged at the time of filing the bill, and spreading over the premises the earth excavated, and removing or carrying away from the premises any ores, minerals or metals, it should be set aside. So far as it restrains the Company from moving or carrying away any fixtures, buildings, fences or other erections, it should be retained. The other part of the injunction, which prohibits the defendants from cutting down or injuring any timber or trees, or pulling down any fences, or interfering with and disturbing the complainant and his agents while engaged in their lawful avocations and business in and about the said premises, and obstructing their peaceable ingress and egress to and from thence, must be so modified as to apply only to acts out of the ordinary course of the lawful business of the Company, and done for the purpose of harassing and injuring the complainant.

Let the injunction be modified so as to conform with these directions.