Packard v. Bergen Neck Railway Co.

─────────────────

RALPH G. PACKARD, appellant,

*v.*

THE BERGEN NECK RAILWAY COMPANY, respondent.

1. On a bill by a railroad for an injunction to restrain a person from building a canal across land previously condemned for the railroad's use, for which damages have been assessed by a jury and paid into court, defendant cannot urge that the complainant's charter has expired, since such objection should have been taken by *certiorari*.

2. The right to enter upon condemned lands, which is conferred by *Rev. tit.* "*Railroads and Canals*" ?  *100*, upon a railroad, upon paying the amount awarded by the commissioners, is not stayed by the suing out of a writ of error by the owner of the lands.

3. *Sup. Rev. tit.* "*Condemnation of Lands*" ?  *2*, providing that whenever it shall appear to the chancellor that lands taken by right of eminent domain are encumbered by any mortgage &c., the money awarded to the owner may

be paid into the court of chancery, applies to appeals from the circuit court, as well as from the court of common pleas.

4. The charter of the city of Bayonne, requiring that provisions for opening and grading a street must be taken by "ordinance," applies to the building of a draw-bridge, and provisions therefor by "resolution" are void.

5. It is not competent for a private individual to object to a crossing at grade on the ground that *Rev. tit. "Railroads and Canals" § 102* prevents railroads from crossing any street or highway in any city except above or below grade, especially when he will not be particularly injured by a crossing at grade.

6. In such action, where a projected highway of the city coincides with the intersection of the proposed canal and railroad in a marsh inaccessible to horses and vehicles, and defendant has procured the adoption of a resolution by the city council granting to defendant a contract for the erection of a draw-bridge at that point, a preliminary injunction prayed by defendant against the construction of the railroad by a solid filling will not be granted, unless he will stipulate to release the judgment for damages already awarded, and submit to a new award, and obtain the consent of the city council to allow the railroad to cross the street in question at grade, and not insist upon a draw-bridge.

7. Such preliminary injunction will not be granted when the evidence fails to show the accrued cost of defendant's canal, or an estimate thereof, or how much more it would cost complainant to erect a draw-bridge than to cross by a solid filling, or that such cost would not be more than the whole value of defendant's canal, or that the work already expended would be a total loss.

On appeal from a decree advised by Vice-Chancellor Pitney in *Bergen Neck Railway Co.* v. *Packard*, who filed the following conclusions :

The complainant, claiming to be duly organized under the General Railroad law, laid out a railroad along the margin of a stretch of salt marsh which skirts New York bay, within the corporate limits of the city of Bayonne. In so doing it crossed lands of the defendant, of which it proposed to take about two acres. The defendant had previously planned a canal and basin for large vessels, to be excavated in the salt marsh, and extending therein some two thousand feet from the shore. This was to be reached by a channel dredged out to the requisite depth through the shallows from deep water. The mouth of this canal or basin was crossed by the complainant's proposed road, and the

building of the road in the ordinary way would, of course, entirely obstruct it.

About January 1st, 1890, the defendant had substantially completed his dredging in the shallows, and had commenced the excavation, in the salt marsh, of the bed of the canal. The complainant, being unable to settle with defendant, on January 11th, 1890, applied to Judge Knapp for the appointment of commissioners. They were duly appointed, on notice, on January 22d. On February 3d they met, after notice, and viewed the premises, and on March 13th made their award. In the meantime defendant had proceeded with his excavation, and on February 3d, the date of the first meeting of the commissioners, was engaged in excavation on the land to be condemned, and on the 13th of March had entirely crossed it. The defendant appealed from the award, and the appeal came on for trial at the Hudson circuit court April 30th, and was given to the jury May 2d. The railroad company, being called on at the trial so to do, declared that their plan and intention was to build a solid embankment across the proposed canal, and that they were willing that damages should be assessed accordingly, and the case was so put to the jury.

At the trial it appeared that the salt marsh, to be occupied by the defendant's proposed canal and basin, was crossed by divers streets laid out, but not actually opened or used, and that the title to the bed of three of these streets, viz., East Twenty-fifth, East Twenty-eighth and East Twenty-ninth, had been acquired by the city by ordinance opening the same; whereupon, in instructing the jury on the subject of damages, the learned judge told them that the defendant had no right to excavate for his canal and basin across the public streets, and that his project must be so far restricted as that circumstance would restrict it, and that they should assess their damages accordingly. The jury, nevertheless, found a verdict for $17,000, in place of an award by the commissioners for $5,000. Judgment was not entered on the verdict until September 6th, the delay being due to negotiations for settlement between the parties.

On the 6th of May, four days after the verdict, the defendant petitioned the mayor and common council of Bayonne to vacate six streets of the city where his proposed canal and basin would cross and occupy them. These six comprised all the streets interfered with by the canal and basin except East Twenty-eighth street. This East Twenty-eighth street, as laid out on paper, crosses the defendant's canal at the point where the complainant's railway crosses it. It crosses the canal almost at right angles, but it cuts the line of the railroad at a very acute angle. With regard to this street the defendant, by his petition, requested the common council not to vacate it, but to permit him to grade it from the westernmost limit of his land to the westernmost side of his canal and basin, and to build and maintain a draw-bridge, not over twenty-five feet wide, on the line of the street, and across the canal. The result of a draw-bridge at the point described would substantially defeat the construction of the complainant's road. This petition was acted upon by the common council the same evening, without any notice whatever, and a resolution was adopted in precise accordance with the defendant's prayer in his petition. In fact, the counsel for the defendant in his litigation with the complainant was also the stated counsel of the municipality. Negotiations for a settlement between the parties were had, extending from the date of the verdict to late in September, without result. On the 26th of September the complainant filed its bill in this court, properly verified, setting out the condemnation proceedings and award, verdict and judgment thereon, and also that the land condemned was subject to certain mortgages and other encumbrances, and asking for leave to pay the money into court under the provisions of the second section of the act of March 9th, 1877. *P. L. of 1877 p. 137; Rev. Sup. p. 128.* Upon filing this bill, an order was made for paying the money into court, and it was done on September 27th. Such payment included interest and costs. Notice was given to the defendant of this payment, and he at once brought his writ of error to the court of errors and appeals to review the judgment of the circuit court. On the 29th of September complainant filed another bill, setting out the facts as hereinbefore

stated, and that the defendant proposed to grade Twenty-eighth street, and to construct a draw-bridge over his canal, all within the limits of the land taken and condemned by the proceedings in question, and praying an injunction. Upon filing this last bill, with affidavits, and upon exhibits shown, an order was made that the defendant show cause, on a day named, why the injunction should not issue. The defendant filed his answer, combined with a cross-bill, by which he set up several defences to complainant's equity, to be specifically noticed hereafter, and by his cross-bill set out in full the nature and extent of his proposed canal and basin, claimed that the complainant's railroad, constructed as proposed, would ruin the enterprise, render all the moneys expended a complete loss, and for these reasons that the conduct of the complainant, in so constructing their road, was a wanton and unwarranted exercise of a statutory power which should be restrained by this court, and praying that complainant might be restrained from crossing his canal except by a draw-bridge, and from crossing East Twenty-eighth street except by an overhead crossing.

The motions for and against injunctions on either side were argued at great length by the defendant's counsel and decided by me at once. I am now asked to state my reasons for use on appeal.

The first point made by the defendant was, that the complainant's charter had expired, and that its franchise was lost by failure to do certain acts within the time limited by the act. I held that the defendant should have taken this objection by proceeding at law by *certiorari*, and could not be heard upon it in this court, especially after award made and money paid into court.

The second point was, that the proofs showed that there was an understanding that, pending the negotiations for a settlement, no legal steps should be taken by either to the prejudice of the other, and that defendant had delayed suing out his writ of error, relying upon it, and that the suing out of that writ of error stayed the defendant's right to proceed to pay the money and take possession. I held that the defendant was entitled to stand before the court precisely as he would have done if he had sued out

his writ of error *instanter*. The judgment was entered on the verdict. But I also held that the writ of error did not in any degree affect the complainant's right to take possession upon paying the amount found by the jury. The twelfth section of the General Railroad act (*Rev. p. 928 ¶ 100*) provides that upon paying the amount awarded by the commissioners the railroad company shall be entitled to enter, &c. The legislature might have stopped here and given an appeal from the award without staying the right to take possession. Such provision was made in many of the old special charters, and is found in section 7 of the General Water Works act (*Rev. p. 1366 ¶ 44*), and I venture the suggestion that such was the intention of the draftsman of the General Railroad law, but his language has been, very properly, of course, construed otherwise, and it has been held that the provisions of section 13 (*Rev. p. 929 ¶ 101*) postponed the right of possession in case an appeal be taken before payment until after verdict. *Johnson* v. *Railroad Co., 18 Stew. Eq. 454.* But there is nothing in the nature and effect of a writ of error to stay the complainant's right. It will not stay execution of an ordinary judgment unless bail be given. Here, the legislature has declared that, upon paying the verdict, the railroad company shall have the right to enter, &c., and it nowhere says that such right shall be stayed by a writ of error.

The third point was, that the payment of money into court was nugatory. It was not denied that the encumbrances, or some of them, exist as set out in first bill, and that it was a proper case for such payment under the second section of the act of March 9th, 1877 (*P. L. of 1877 p. 137; Rev. Sup. p. 128*), but it was contended that that section did not apply to the case of an appeal, as here, to the circuit court, but only to cases where appeals were originally limited to the court of common pleas, mentioned in the first section.

I think this altogether too narrow a view, and that it would, in effect, quite nullify the section in question, since, notoriously, the number of cases to which it could apply is extremely small. In short, I deem it absurd to adopt such construction. Counsel on this point contended that complainant had not progressed far

enough with its suit to entitle it to the benefit of the payment into court, but I fail to see any force in this point. What more could it do? Certainly it is not to wait until all parties are brought in by process, and the title to the money, as between them, is settled. The statute is imperative that payment into court and notice shall have the effect of actual payment. The money so paid into court is put beyond the power of the railroad company, and within the immediate grasp and reach of the parties actually entitled to it, and such payment satisfies the demands of the constitution. Such a payment is clearly distinguishable from that under review in *Redman* v. *Railroad Co., 6 Stew. Eq.* 165. The payment there was made into court under the last clause of the thirteenth section of the act (*Rev. p. 929 ¶ 101*), with an order "directing that it shall remain there to abide the result of the appeal, or the further order of the court," showing that it was not to be within the immediate and unfettered reach and grasp of the land-owner, but that the railroad company still retained a right in it. And it is this feature that distinguishes that case from the one in hand, where, as before remarked, the money is put beyond the reach and control of the railroad company, and within the immediate and unfettered reach of the real land-owner.

The learned vice-chancellor, in reviewing the clause of the act in question, in *Redman* v. *Railroad Co.*, evidently understood that the legislature, by providing for the payment into court by the railroad company in case of appeal, did not intend to put the money within the immediate reach of the land-owner, but to impound it in court pending the appeal, and it was against the clause, as so construed, that his judgment was aimed. If such is not the proper construction of that last clause, if under it the land-owner could have come at once to the court, and demanded the money without regard to the appeal, then I should say that the learned judge's argument was unsound and his conclusion erroneous.

The fourth point was, that the crossing is over a street in a city at grade, and forbidden by the statute (*Rev. pp. 929, 930 § 14 ¶ 102*), which provides "that in case said railroad shall cross any

street or highway in any city, it shall be either above or below·
the grade thereof, at such distance as shall not interfere with the·
free and uninterrupted use of said streets or highways." The
point of crossing here is a salt marsh, impassable by horses or·
vehicles, many hundred feet from any high ground or human
habitations or roads, and is near the margin of the bay. There·
is not the least appearance of a street or highway anywhere in
the neighborhood. It exists as a street wholly on paper. If it.
were necessary to decide the question, I should be inclined to·
hold that the statute did not prohibit the building of a railroad·
at the point in question at what is called grade. But I did not
find it necessary to decide it, since I considered that it was not
competent for the defendant to raise the point. All his right,.
title and interest in the *locus* was taken by the condemnation.
proceedings. In the present condition of affairs, he was not
specially injured by obstructing the street at the point in ques-
tion. Such obstruction did not hinder him from reaching his·
premises, and, even if it did, I am of the opinion that the clause·
above quoted can only be invoked by the municipality itself, and·
so long as it does not complain, individuals may not. At any·
rate, it seems to me that the defendant could not do so under the·
circumstances next to be mentioned.

The fifth point taken was that the proposed filling up of the·
canal, and construction of a railroad across it, would prevent the
construction of the draw-bridge, and the grading provided for by
the resolution of the common council passed May 6th, and above·
referred to. Counsel for the complainant contended, and I think
rightly, that this resolution was absolutely void, and not merely
voidable, for the reason that the charter of Bayonne requires that
such action must be taken by ordinance. *State* v. *Bergen, 4 Vr.*.
*72; State* v. *Bayonne, 6 Vr. 233; State* v. *Lambertville, 16 Vr.*
*279, 282.* Counsel for defendant attempted to distinguish the
case of a contract to build a draw-bridge from a provision for·
opening and grading a street, but I am unable to follow him.
The inception of the affair—the adoption of a drawbridge as part
of the street—must, as it seems to me, be by ordinance. It.
seemed to me at the time, and I am still of the opinion, that if·

the municipality is required by its charter to proceed by ordinance, and attempts to proceed by resolution, its action is simply void, quite as much so as would be a joint resolution of the legislature altering the canons of descent, or creating a new misdemeanor. The constitution has directed how the legislature shall proceed to enact laws, and any attempt to enact them in any other mode is a simple nullity. So with a municipality. When its charter has directed a particular mode of procedure, in dealing with certain subjects, that mode must be followed or the action is unauthorized, and has no more force than similar action by any like number of ordinary citizens. But beyond and above the point that the action in question was by simple resolution, I thought at the hearing, and still think, that the circumstances under which, and the evident purpose with which, the resolution was adopted, rendered it inequitable for the defendant to set it up against the complainant. It was palpably a proceeding set on foot by the defendant, not in the interest of the public, or to secure any public purpose, but to enable him to defeat the railroad company in constructing their road, the right to construct which, in the manner proposed, they had acquired, as against him, by due course of law, and had come under obligation to pay to him damages assessed upon the basis of an utter destruction of his whole project. He had obtained a verdict, and was entitled to a judgment against the railroad company for damages, based upon the complete filling up and obstruction of the canal at the point in question, and then proceeded at once to procure such action on the part of the common council as would, if successful, enable him to construct his canal, and prevent the complainant from enjoying the right it had come under irrevocable obligation to pay him for, and from building its road at all, except at an enormously increased expense. His object in procuring the vacation of all the streets except East Twenty-eighth street is manifest. That street alone crossed the railroad on the land taken from him. Complainant, by the verdict, acquired a vested right, as against the defendant, to cross the canal and street in the manner proposed, viz., by a solid filling and at grade. It was not competent, as it seems to me, for the defend-

19

ant to divest that right by the means invoked.   That such was
the object of the proceedings of the common council was admitted
by counsel for the defendant, and attempted to be justified by the
gravity of the situation.  I think it cannot succeed.   It seemed
to me, at the hearing, that the whole proceedings of the common
council in reference to the affair was nothing more or less than
an abuse and a prostitution of their powers to the advancement
of the private interests of a single individual and to the detri-
ment of the complainant, and for that reason, as well as the
other, they were not binding on the complainant.   Over and
above, and beside all this, is the lack of notice.   The act was a
judicial one, and notice lies at the base of all judicial actions.
*State* v. *Morristown, 5 Vr. 445.*

The last point taken arises out of the prayer for an injunction
by the defendant in his cross-bill.   He alleges that the crossing
of his canal by a solid filling, resulting, as it will, in a complete
destruction of the enterprise, is a wanton and inequitable use of
the statutory power invested in the complainant, and should be
restrained by this court.

Several answers were made at the argument to this point.
First, that it is a matter which might and should have been
tested in another tribunal at an earlier stage of the proceedings.
The supreme court has complete, if not exclusive, jurisdiction of
that subject, by means of its writ of *certiorari.   Olmstead* v.
*Aqueduct Co., 17 Vr. 495; 18 Vr. 311; United Companies* v.
*National Docks Railroad Co., 23 Vr. 90,* are instances of the
exercise of the supervisory power of the supreme court over such
matters.

In the second place, it did not appear to my satisfaction that
the allegations of the answer were sustained by the proofs; cer-
tainly not to a degree sufficient to warrant a preliminary injunc-
tion.   The cost of the defendant's canal at the date of the award
was not shown, nor was any estimate made or offered, of how
much more it would cost complainant to erect and maintain a
draw-bridge at the point in question than to cross by a solid fill-
ing.   It did not appear but that the cost of a draw-bridge would
be more than the whole value of defendant's project, even after

Packard v. Bergen Neck Railway Co.

he had obtained the right from the municipality to cross the
streets.　Neither did it appear, to my satisfaction, that the ex-
penditures made in dredging out a channel across the shallows
and up to the line of the piece taken by the railroad company
would be wholly lost if the canal was not constructed farther
than that.　There was ample room between the railroad and the
outside wharf line to build docks and piers and a large basin,
and I think that the defendant's plan showed a scheme of that
kind.　I thought that to sustain this point the defendant must
show that the railroad company could, by a comparatively small
outlay, save a comparatively great injury to him, and that they
improperly and inequitably refused to do it.　This I think he
entirely failed to show.

In the third place, I held that the defendant could have no
standing in this court on this point unless he submitted to terms,
and this he refused to do.　Those terms I held to be at least the
following—first, that he should give up the verdict and all right
to damages in the condemnation proceedings, and that he should
put the complainant in the way of getting back its $17,000 paid
into court, and that he should stipulate to accept, in lieu of dam-
ages to be awarded by the jury, such damages as this court
might award under the changed circumstances.　Then, that he
should procure the consent of the common council of Bayonne
that the complainant should cross East Twenty-eighth street at
grade, and that the drawbridge scheme for a road crossing should
be abandoned.　Other terms suggested themselves to my mind,
but as the defendant showed no disposition to submit to any
terms, the subject was not further discussed.

For these reasons I thought the defendant's case wholly failed,
and that the complainant, having shown a clear title to the *locus
in quo*, was entitled to the uninterrupted enjoyment of it, and for
that reason I granted the injunction to the complainant and
refused it to the defendant.

*Mr. Joseph D. Bedle* and *Mr. Charles W. Fuller*, for the ap-
pellant.

*Mr. Charles L. Corbin* and *Mr. Charles D. Thompson*, for the respondent.

Decree affirmed for the reasons given in the court of chancery.

MAGIE, J., expressed his views as follows:

I vote to affirm the decree below upon a general concurrence with the conclusions reached by the learned vice-chancellor who heard the cause.

But I am not willing to be considered as concurring in all the views expressed in the opinion below.

In the first place, while I assent to the construction of section 2 of the act of March 9th, 1877 (*Rev. Sup. p. 128*), which makes its provisions apply to cases of condemnation of lands generally, and not alone to condemnations which are the subject of the provisions in section 1 of that act, I desire not to pronounce on the propriety of the practice adopted in the proceeding which has given rise to this litigation.

My present view is, that an order directing the payment into the court of chancery of an award, under section 2, ought not to be made *ex parte*, but only after an opportunity has been given, by rule to show cause or otherwise, to the person named in the award, to be heard on the question whether the facts justify such an order.

But that question does not call for decision. The act confers jurisdiction to make such an order. It cannot be attacked collaterally because prematurely or irregularly made. Relief in that respect could be obtained only by an appeal from the order.

In the second place, I am not prepared to pronounce upon the validity of the resolutions of the council of the city of Bayonne, in the absence of that municipality as a party to this cause.

In my judgment, the case does not call for such an adjudication. By the terms of the resolution Packard did not become a contractor obligated to the city to grade Twenty-eighth street and build the draw-bridge mentioned therein. At the most he became a licensee, permitted to do that work if he desired. He was equally at liberty to refrain from doing it.

Packard v. Bergen Neck Railway Co.

Under those circumstances, the question presented did not necessarily involve the rights of the city. Packard's property had been condemned for respondent's use, and a jury had awarded a large sum for compensation, upon a scheme of condemnation which carried a solid filling across his proposed canal. It was proper to restrain him from volunteering to do work the effect of which would have been to deprive respondent of rights which it had acquired against him, and for which he had been paid by the payment of the award into court.

But I must express a decided dissent, in which I believe I am joined by my associates, from the expressions of the opinion below respecting the city of Bayonne and its officers. They were not before the court, and the opinion in that respect was uncalled for. There is nothing in the case to justify any animadversion upon their conduct. A fair inference may be drawn from the circumstances that the city authorities deemed the projected enterprise of Packard of great importance to the municipality, and upon that inference the license to Packard was a natural result. The license may not have been properly conferred, but there is nothing to justify a charge that it was not given, or attempted to be given, in good faith.

DIXON, J. (dissenting).

The complainant does not dispute that the city of Bayonne has the right to grade East Twenty-eighth street to the established grade, and that such right is unimpaired by the condemnation proceedings which the complainant had prosecuted against the defendant. But the complainant contends that the defendant acquired no right so to grade the street under the city's resolution of May 6th, 1890—*first*, because the city council passed the resolution with improper motives; and, *secondly*, because the city's power to grade streets can be exercised by ordinance only. For these reasons the complainant prayed and the learned vice-chancellor advised a preliminary injunction restraining the defendant from grading the street.

I think the city itself has such an interest in the carrying out of this resolution that the work should not be thus stayed, *in*

*limine,* without giving the city an opportunity to be heard on the questions involved. It should have been made a party to the suit. Because it was not, so much of the decree as directs an injunction preventing Packard from grading the street should be reversed.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, MAGIE, REED,. SCUDDER, VANSYCKEL—6.

*For reversal*—DIXON, KNAPP, BROWN, CLEMENT, SMITH,. WHITAKER—6.