NICHOLAS W. D'ELIA and MICHAEL J. SEXTON,
complainants-respondents,

*v.*

JOHN WARREN and GUARDIAN TRUST COMPANY et al.,
defendants-appellants.

[Argued May 24th, 1928—Decided June 21st, 1928.]

1. Where, on a bill brought to enjoin the breach of an agreement for the sale of bank stock and to enjoin the consummation of a sale between the defendants of the stock and the transfer thereof, the answering affidavits of several defendants contradicted every fact alleged by the complainants as entitling them to the relief sought, and irreparable damage to the complainants by the threatened acts was not shown, the grant of a preliminary injunction was error.

2. Where the answering affidavits of several defendants contradicted every fact alleged by the complainants as a basis for the relief sought, and disproved the equity of the complainant in his bill for an injunction, the granting of a preliminary injunction is not proper.

3. A preliminary injunction will never be granted unless the act threatened to be done will inflict an irreparable injury on the complainant.

On appeal from an order of the court of chancery.

*Messrs. Wall, Haight, Carey & Hartpence,* for the appellant John Warren.

*Messrs. Lindabury, Depue & Faulks* and *Mr. J. Edward Ashmead,* for the appellant Guardian Trust Company.

*Mr. Daniel D. Loeb* and *Mr. Thomas J. Brogan,* for the respondents.

PER CURIAM.

The above cases are two appeals which were argued together from an order of the court of chancery dated April 12th, 1928.   The order, among other things, restrains the

appellant John Warren from transferring, pledging, delivering or dealing with in any way the shares of capital stock of the Journal Square National Bank standing in his name or in which he claims an interest, including all the stock of said bank pledged or otherwise delivered to the Guardian Trust Company of New Jersey (the other appellant) by the said John Warren or on his behalf. The order also restrains the appellant Guardian Trust Company of New Jersey from proceeding to sell three thousand forty-nine shares of the capital stock of the Journal Square National Bank of Jersey City pledged to it by John Warren on December 30th, 1927, as collateral security for the payment of a loan to him of $650,000 evidenced by his note payable on demand.

The record presents the following facts. In the early part of the year 1927 the Journal Square National Bank, located in the city of Jersey City, resolved to increase its then existing capital stock from two thousand five hundred shares to five thousand shares. Each share was of the par value of $100. The new shares were offered to the stockholders at $250 per share. Few of the stockholders availed themselves of this offer. It was provided in the offer that the stock must be accepted not later than April 1st, 1927. On that date over two thousand shares of the new capital stock were unsubscribed for. On April 11th, 1927, a resolution was passed by the board of directors of said bank forfeiting the rights of all stockholders who had not filed their subscriptions and these rights were turned over to the appellant John Warren, who was the president of the bank, to do with as he saw fit without any consideration for the rights. Notwithstanding various efforts on the part of Warren, he appears to have been unable to dispose of the shares at $250 per share. On or about December 30th, 1927, Warren paid to the bank the sum of $514,250 and received certificates of stock for two thousand fifty-seven shares. Warren owned a considerable number of the shares of stock of the bank other than the two thousand fifty-seven thus acquired. On December 30th, 1927, he pledged the two thousand fifty-seven shares together with nine hundred and ninety-two other shares of

the stock of the bank owned by him with the said Guardian Trust Company and obtained upon his note, secured by said shares of the capital stock of said bank, the sum of $650,000. On the same day Warren entered into a contract with Edward I. Edwards for a sale of three thousand one shares of the capital stock of the said bank for the sum of $1,067,850. The shares of capital sold to Edwards constituted a controlling interest in the bank.

When this sale became known Nicholas W. D'Elia and Michael J. Sexton, stockholders and directors of said bank (Sexton being also the vice-president thereof), filed a bill of complaint in the court of chancery. In this bill they claimed that under an agreement entered into by Warren and some of the other stockholders and directors of the bank on September 9th, 1925, Warren was obligated to offer a proportionate part of his stock to the parties to the agreement at the price of $200 per share or the book value thereof according to the last published statement before negotiating a sale to third parties; that this Warren had not done and had made the contract with Mr. Edwards without any notice to them or opportunity afforded them of becoming purchasers of any part of such stock. The relief originally prayed for was an injunction perpetually restraining Warren, Edwards, the Guardian Trust Company, and certain other parties alleged to be interested in the transaction, from violating the terms of the agreement of 1925 and from consummating the purchase by Edwards of the majority interest of the stock of the bank. The bill asked that the defendants might be perpetually enjoined from transferring or attempting to transfer any shares of the capital stock of the bank.

The bill was thereafter amended by setting up, in addition to what has already been stated, that Warren, as the holder of the two thousand fifty-seven shares issued to him on December 30th, 1927, was acting in a fiduciary capacity to the bank and its stockholders, and that the bank and its stockholders were entitled to any profits which Warren made upon a resale of said stock, and that this fact was known to the defendants. The prayer of the amended bill was that it be decreed that the issue of the two thousand fifty-seven

shares of capital stock of the bank to Warren was fraudulent, and for this reason it should be set aside, and the defendants, or such of them as had custody or control thereof, should be commanded to surrender such stock certificates to the bank for cancellation. The amendment also included an alternative prayer to the effect that if the above relief was denied Warren might be decreed to account to the bank for all profits realized or to be realized by him upon the sale of two thousand fifty-seven shares of stock.

The charges in the bill, so far as Warren is concerned, are absolutely denied by him so far as they attack his rights to the absolute and uncontrolled possession of the new issue of stock. He further claims that the agreement of 1925 was no bar to that right. Edwards and the Guardian Trust Company denied any knowledge of any of these matters and aver that their conduct was a *bona fide* exercise of the rights which they considered were vested in them. Edwards claims that he was entitled to buy the stock from Warren as it stood in his name. The Guardian Trust Company claims that it had the right to loan to Warren the $650,000 and accept the three thousand forty-nine shares of capital stock as collateral. Warren applied to the court of chancery to compel the complainants to indemnify him or the bank against any loss which might result from the improper allowance of the injunction. The Guardian Trust Company asked leave to proceed to sell the stock held as collateral and in the alternative to have the complainants execute a bond to indemnify it from loss by reason of the injunction. Edwards also asked leave to cancel the contract for the purchase of the stock from Warren, and to have Warren return the $50,000 deposit paid to him. All of these applications were denied. The court directed the issue of an injunction to the effect already stated.

We are of the opinion that the order appealed from was without legal justification. The answering affidavits of the several defendants contradicted every fact alleged by the complainants as entitling them to the relief sought. The rule is that, when the equity of the complainants is disproved by such answering affidavits, a preliminary injunction is not

proper. This doctrine was laid down in the case of *Citizens'
Coach Co.* v. *Camden Horse Railroad Co., 29 N. J. Eq. 299,*
in an opinion written by the late Chief-Justice Beasley which
has been followed and commended in many cases cited in our
reports. In that case it was also decided that a preliminary
injunction will never be granted unless the act threatened
to be done will inflict an irreparable injury upon the com-
plainant. These two doctrines of our equity jurisprudence
have been followed in many cases, including those of *McMil-
lan* v. *Keuhnle, 78 N. J. Eq. 251; Aldrich* v. *Union Bag and
Paper Co., 81 N. J. Eq. 244; Guangione* v. *Guangione; 97
N. J. Eq. 303,* and *Loomis* v. *Public Service Transportation
Co., 102 N. J. Eq. 259; 140 Atl. Rep. 398.*

We feel that at this time it is improper to discuss generally
the merits of the case. The failure of the court below to apply
to the case under consideration the two doctrines relative to
preliminary injunctions is sufficient in our opinion to reverse
the order of the court of chancery appealed from. The order
is accordingly reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, KALISCH,
BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUS-
KIRK, McGLENNON, KAYS, DEAR, JJ. 12.