On January 6th, 1936, the complainants filed a bill of complaint against the defendant union, an unincorporated *Page 377 
organization, and eight individuals of the union. The bill charges, and the affidavits substantiate the charges, that: (a) the affairs of the union are dominated by the defendant Joseph Markle; (b) when the members of the union complained of the actions of Markle, he threatened them with the loss of their jobs; (c) the complainants to earn their livelihood, as a matter of necessity must belong to the union; (d) Markle has refused to give an accounting or a financial statement of the affairs of the union; (e) the rules of the union were changed without proper notice so that opponents of the incumbents of the union could not be nominated and elected; (f) the tenure of office of the incumbents was extended in order to perpetuate them in office. The bill prayed for such other and further relief as the circumstances of the case warrant.
On January 27th, 1936, an amended bill was filed which, interalia, charged that the rights of the complainants are prejudiced and violated; that excessive salaries are being drawn by the officers of the union; and that the union is being operated at a loss. The prayers in this bill called for the appointment of a custodial receiver, and that election of officers of the union be held under the control and jurisdiction of such receiver. The verifying affidavits annexed to both bills specifically, and in detail verify each and every allegation. On the original bill, an order to show cause was issued requiring the defendants to show cause on January 13th, 1936, why an injunction should not issue pursuant to the prayers of the bill, and in the meantime, the union and the individual defendants were restrained from using violence and threats.
On January 27th, 1936, upon the filing of the amended bill of complaint, it appearing to the court that the situation existing was grave, and it further appearing that no affidavits had been filed on the return of the order to show cause issued on January 6th, 1936, this court appointed John J. Lenehan as custodial receiver and trustee for the assets of the local union, and it granted preliminary restraints, somewhat broader than those contained in the order to show cause of *Page 378 
January 6th, 1936. The order of January 27th, 1936, was returnable February 3d 1936, on which day argument before the court was made by counsel, and on February 11th, 1936, an order, in effect making permanent the order of January 27th, 1936, and broadening the restraints, was advised.
The defendants filed answering affidavits which sought categorically to deny the allegations of the bill of complaint and the affidavits thereto annexed. It appears quite manifest that the defendants through such affidavits aim to bring this case strictly within the ruling made in the case of CitizensCoach Co. v. Camden Horse Railroad Co., 29 N.J. Eq. 299, which lays down three rules governing the issuance of preliminary injunctions, as follows: (1) one will not be ordered unless from the pressure of an urgent necessity — evidence of threatening irreparable mischief; (2) one will not be granted when the right on which the complainant bases his claim, as a matter of law, is unsettled or doubtful; (3) one will not be allowed when the defendant's answering affidavits controvert and deny every material allegation of the bill of complaint and the affidavits supporting it.
The defendants' answering affidavits clearly indicate that they were drawn with a view to falling within the third rule of theCitizens' Coach Company Case. However, there are several instances where the courts have indicated that if circumstances warrant, they will not obstinately and steadfastly adhere to the third rule, if sound judgment calls for a preliminary injunction despite the existence of answering affidavits. The courts are not persuaded so much by the formality of the filing of answering affidavits as they are by their substance. They do not always deny the issuance of a preliminary injunction where the bill and the affidavits are met by a denial. Chancellor McGill, inHemsley v. Bew, 53 N.J. Eq. 241, said:
"It does not appear that denial of the present application will deprive the court of ability to afford him relief at final hearing, if time or further proofs shall verify the theories upon which his present apprehension of damage is largely grounded * * *." *Page 379 
In the case of Connett v. United Hatters of North America,76 N.J. Eq. 202, the following observation was made by the court:
"In short, the situation is one which ought not to be tolerated in any civilized community and is one of the situations which is intended to be taken care of by the ordinary common law methods. These acts of violence and disorder which are so fully testified to in the complainants' affidavits, and which everybody of ordinary intelligence knows about, are denied by a large number of the affiants on behalf of the defendants. These affidavits,in so far as they deny the acts of turbulence and rioting andother public affrays in the streets, are undoubtedly false.
(Italics mine.) I must reject their statements on these points and do so with the remark that their evidence on other points, and in fact the whole of the defendants' case, is thereby very much weakened."
And in this last cited case, the chancellor further stated:
"These assaults seem to have been unprovoked. To some extent they are denied, but the denials are not clear and convincing, and I am led to believe that the facts are as are stated in the affidavits of the three men who were assaulted.
 * * * * * * *
"These men united in an affidavit which is intended to deny the allegation on the part of the complainants in that behalf, but a reading of the affidavit shows that instead of a denial it is rather a confession of the fact charged against them. Their affidavit is a joint one, and I quote this from it as showing the sort of denial upon which they rely: `I am a member of said executive committee, and say that these charges and allegations are each and all of them false and untrue. The executive committee in question has been in existence for a number of years, and was not specially appointed at the beginning of this strike or for the purpose named.'"
The language of the court in this last cited case, applies most appropriately to the facts in the instant case. In Ideal LaundryCo. v. Gugliemone, 107 N.J. Eq. 108, a similar *Page 380 
question was presented to the court of errors and appeals. The court of chancery had granted a temporary injunction. On the appeal the defendant contended "that a temporary injunction could not lawfully issue in the face of his denial of secret methods contained in his affidavits." The court unanimously held as follows:
"We think that it could, in view of the character of suchdenial. (Italics mine.) While the general rule is that a preliminary injunction will not issue where the material fact in complainant's bill and affidavits on which the complainant's right depends, is met by a full, explicit and circumstantial denial under oath, yet, where, as here, the denial lacks these essential qualities, and upon the entire showing from both sides it appears reasonably probable that the complainant had the right claimed, the injunction may issue."
The court concluded its opinion in the following language:
"This is the mere conclusion of the affiant, and not the full, explicit and circumstantial denial required by the rule, and when considered in connection with complainant's affidavits, we feel constrained to say that upon the entire showing it appears reasonably probable that the complainant had the right claimed, and that therefore the injunction was properly awarded."
D'Elia v. Warren, 103 N.J. Eq. 190. Vice-Chancellor Berry in Gevas v. Greek Restaurant Workers' Club, 99 N.J. Eq. 770,
refused to be persuaded by the affidavits of the defendants; his remarks can be most appropriately used here:
"But it has been well said that `the law is not to be hoodwinked by colorable pretenses; it looks at truth and reality through whatever disguise it may assume.' Commonwealth v.Hunt (Mass.), 4 Mt. 111; 38 Am. Dec. 346. And in Earle v.American Sugar Refining Co., 74 N.J. Eq. 751 (at p. 761), Vice-Chancellor (now Chancellor) Walker said: `A court of equity * * * penetrates all disguises of form, and, disregarding the shadow, grasps the substance.'"
Vice-Chancellor Bentley in the case of National Security Bank
v. Blumberg, 96 N.J. Eq. 270, among other things said: *Page 381 
"Strong and cogent proofs are required to clear away the very powerful prima facie case of fraud made out by the complainant."
I feel that in the instant case that the bill of complaint presents a "very powerful prima facie case" in behalf of complainants. In Euster v. Mewmeyer, 91 N.J. Eq. 21, the court said:
"It is clear that if the matters set forth in the bill and verified by the appended affidavits are true complainant is entitled to the relief sought. But at the return of an order to show cause affidavits have been filed on behalf of defendant denying that the mistake occurred upon which complainant relies; defendant accordingly invokes the third rule defined inCitizens' Coach Co. v. Camden Horse Railroad Co., 29 N.J. Eq. 299,
in opposition to restraint pendente lite.
 * * * * * * *
"To refuse the restraint now sought would utterly destroy the subject-matter of the controversy, since no adequate defense can be made to the pending action at law unless and until a decree of reformation may be procured, and should restraint be now refused the resulting injury to complainant will be irreparable in its nature; moreover, the possibility of loss to defendant herein by reason of delay in the trial of the pending action in the law court can be prevented by appropriate terms imposed upon complainant as a condition to the restraint sought."
Then again in Forstmann Huffman Co. v. United FrontCommittee of Textile Workers, c., 99 N.J. Eq. 230,
Vice-Chancellor Bentley in commenting on the affidavits filed by the defendants, stated:
"* * * certainly there is no denial that would persuade any rational being, in view of the exhibits in the nature of declarations against interests."
Vice-Chancellor Pitney granted a preliminary injunction in spite of the denials of the defendants in Packard v. BergenNeck Railway Co., 48 N.J. Eq. 281. See Buckley v. Corse,1 N.J. Eq. 504; and Capner v. Flemington Mining Co., 3 N.J. Eq. 467; Perkins v. Collins, 3 N.J. Eq. 482. *Page 382 
Mr. Justice Story wrote an opinion on the point under consideration, which is set out in 3 Daniell's Chancery Pleading Practice (Perkins' Edition) 1787, as follows:
"In Poor v. Carleton, 3 Sumner 73, 74, it is remarked by Mr. Justice Story, that, `In cases of special injunctions, there are two points which seem well established in practice; first, that the dissolution of the injunction is not of course upon the coming in of the answer, denying the merits; and, secondly, that upon the motion to dissolve such an injunction, the plaintiff, under some circumstances, is entitled to read affidavits in contradiction to the answer, not indeed to all points, but to many points.' `If the whole merits are satisfactorily denied by the answer, the injunction is ordinarily dissolved. But there are exceptions to the doctrine, and these, for the most part, are fairly resolvable into the principle of irreparable mischief; such as cases of asserted waste, or of asserted mismanagement in partnership concerns, or of asserted violation of copyrights, or of patent rights. In cases of this sort, the court will look into the whole circumstances, and will continue or dissolve the injunction in the exercise of a sound discretion. See, also,Clum v. Brewer, 2 Curtis C.C. 506; Moore v. Hylton, Dev. Eq.429; Bank of Munroe v. Schermerhorn, 1 Clarke 303; Tong v.Oliver, 1 Bland 199; Williams v. Hall, Ib. 195; Hollister v.Barkley, 9 N.H. 230; Village of Seneca Falls v. Matthews, 9Paige 504. See Orr v. Merrill, 1 Woodb. M. 376.'
 * * * * * * *
"In Poor v. Carleton, 3 Sumner 75, 76, Mr. Justice Story remarks, `I confess I should be sorry to find, that any such practice had been established, as that a special injunction should, at all events, be dissolved upon the mere denial by theanswer of the whole merits of the bill. (Italics mine.) There are many cases in which such a practice would be most mischievous; nay, might be the cause of irreparable mischief. The true rule seems to me to be, that the question of the dissolution of a special injunction is one which, after the answer comes in, is addressed to the sound discretion of the court.' `Extraordinary circumstances may exist, which *Page 383 
will not only justify, but demand the continuation of the special injunction.' `I am not satisfied, that the authorities do establish a contrary doctrine. If they did, I should hesitate to follow them in a mere matter of practice, subversive of the very ends of justice.' See Moredock v. Williams, 1 Tenn. 325;Hollister v. Barkley, ubi supra; Shellman v. Scott, R.M.Charlt. 380, 381; Parkinson v. Trousdale, 3 Scam. 370. An injunction will not be dissolved, as a matter of course, on the carrying in of the answer, denying the equity of the bill, if the plaintiff has adduced auxiliary evidence of his right. Orr v.Littlefield, 1 Woodb. M. 18."
In the instant case the relief sought is not a dissolution of the local union; it is an attempt to conserve the assets and the usefulness of the union for the benefit of all the members. The answering affidavits charge that "the complainants have combined themselves to create hard feeling among members of the union." This charge is contained in affidavits which are mimeographed and signed wholesale by various members of the union. Out of ninety-five affidavits filed by defendants, twenty-five of them are mimeographed, and as such are stereotyped, "machine-made" productions. The affiants in those mimeographed affidavits have their names inserted in ink in the beginning of the affidavits. Some of the affiants in those affidavits have repudiated them by subsequently making, and filing, affidavits in which they explain the circumstances under which their affidavits were procured and executed. Quite a number of the affidavits of the defendants herein are stereotyped; identical in expression and punctuation. Affidavits of this kind are generally not convincing. In the syllabus in the case of George Jonas Glass Co. v. GlassBlowers Association of the United States and Canada, 64 N.J. Eq. 640,
appears the following:
"Where, on an order to show cause why an injunction should not be granted against strikers and the labor union, restraining picketing and illegal interference with complainants' employes pending suit for permanent relief, the only showing by defendants consisted of a large number of affidavits, written on printed blank forms — the spaces being filled *Page 384 
with the names of the particular answering defendants — which consisted merely of a denial of the facts alleged in the bill and allegations that the strike which was in progress was being conducted without violence or unlawful interference with complainant's business, and it did not appear that the issuance of the injunction until final hearing would result in any hardship to defendants, the injunction would be granted."
In the syllabus of Riehl v. Riehl, 101 N.J. Eq. 15, in an opinion written by Chancellor Walker, the following appears:
"The chancellor, as the trier of the facts of a case before him, is the judge of the credibility of the witnesses, and, like a jury, does not have to believe a particular witness; a witness is not entitled to credit whose testimony is inconsistent with the common principles by which the conduct of mankind is naturally governed, and the court may disbelieve a witness whenever there is reason therefor."
This local union consists of about eight hundred men; they are entitled to the consideration of this court. If the officers of the local are recreant to the trust confided to them by the members of the union, as charged in the bills filed herein, and I believe they have been, then it is the court's duty to grant relief. Since twenty-five members of the union had executed mimeographed affidavits on behalf of these recreant officers of the union, then, I believe it would be doing no violence to the truth in concluding that such affidavits were the dictated thoughts of one brain who conceived them with the idea of presenting a colorable defense. The affidavits of the complainants show that they are all men of experience and of long standing in the union. In their affidavits "there appears reasonable probability that the complainants had the right claimed." It is inconceivable that such serious charges of the nature made in the bills against the defendant officers could be made by a group of men merely to create dissension. Certainly the mimeographed affidavits of the members of the union are not "strong and cogent proof" that would convince this court of the falsity of the prima facie case established by the complainants. The several affidavits executed by the defendant officers in language and punctuation exact, or *Page 385 
almost identical, will not be accepted by this court as convincing proof of the falsity of the complainants' affidavits. The bills of complaint definitely charge that the rules were improperly changed with respect to the election of officers. Fair play does not sanction the practice of changing rules governing the election of officers in the union "over night," or upon the eve of an election, or "in the middle of the game." These complainants sent a letter to the president of the International Union in Indianapolis, Indiana, on December 4th, 1935, protesting against the illegal and unfair change of rules relating to the election of officers and trustees of the union, and the letter remained unanswered on the specious charge that it could not be considered because it did not bear the seal of the local. The seal of the local was in the possession of the officers of the defendant local, and the complainants were unable to obtain it. Just visualize the attitude of these defendants, upon being requested by the complainants to attach the seal of the local to their letter. It certainly is not unreasonable to assume that the request was, or would be, ignored. These defendant officers stand charged with misfeasance and malfeasance by these complainants. Under the circumstances, it requires no stretch of the imagination to reach the conclusion that they would not aid the complainants in establishing against them the charge of misfeasance or malfeasance before the International Union. Certain charges made by the complainants go unanswered. The affidavits of Joseph Markle, James Walsh and Walter Gibney, dated February 4th, 1936, paragraph 7, states that on April 11th, 1934, $4,500 was expended for three automobiles; paragraph 16 seeks to excuse the expenditure of money for the convention trip to Portland, Oregon; railroad expenses of $1,552 are set up, and $2,028 was spent for incidental expenses for the short period of the convention. The salaries paid to the officers were excessive. In my opinion, the expenditures charged are more than mere waste or extravagance.
The complainants are not seeking by temporary injunction what they seek to obtain by final relief; all they seek to *Page 386 
obtain on final relief is a fair election without intimidation or coercion. In my opinion, a custodial receiver was necessary to conserve the assets of the union. The members of the union are not harmed by it. The only persons affected are the defendant officers whose use of the local's funds are questioned; whose conduct in office is criticised; and whose illegal domination of the local's affairs is "under fire." Vice-Chancellor Fallon, inHoward v. Mayor and Aldermen of Jersey City, 102 N.J. Eq. 213,
stated:
"In deciding an application for preliminary injunction the court will generally be governed by considerations of the relative convenience or inconvenience which may result to the parties from granting or withholding the writ, and where, upon balancing such considerations, it is apparent that the act complained of is not likely to result in irreparable injury to the complainant, and the balance of inconvenience preponderates in favor of the defendant, the injunction ought not be granted. In High Inj. (4th ed.) § 13, the author says:
"`Indeed, the consideration of relative convenience and inconvenience to the parties is one of the principle guides which govern courts of equity in the matter of granting or withholding relief by interlocutory injunction.'"
A balancing of convenience will clearly show that the rank and file of the union are not inconvenienced by the injunction and action of the court in the instant case. If it should turn out on final hearing that the charges made against the officers cannot be substantiated and the bill is dismissed, no permanent harm or even temporary harm will accrue to the union itself.
The principles I have attempted to express in the instant case are well expressed in Harriman v. Northern Securities Co.,132 Fed. Rep. 464; because of their obvious application, I am quoting extensively the observations of the court (at p. 475):
"The case not being ripe for a final decision, the present application is for a preliminary injunction. The granting or refusal of a preliminary injunction, whether mandatory or preventive, call for the exercise of a sound judicial discretion *Page 387 
in view of all the circumstances of the particular case. Regard should be had to the nature of the controversy, the object for which the injunction is sought, and the comparative hardship or convenience to the respective parties involved in the awarding or denial of the injunction. The legitimate object of a preliminary injunction, preventive in its nature, is the preservation of the property or rights in controversy until the decision of the case on a full and final hearing upon the merits, or the dismissal of the bill for want of jurisdiction or other sufficient cause. The injunction is merely provisional. It does not, in a legal sense, finally conclude the rights of parties, whatever may be its practical operation under exceptional circumstances. In a doubtful case, where the granting of the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant through its refusal, the injunction usually should be denied. But where, in a doubtful case, the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would, on the contrary assumption, be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such doubt may relate either to the facts or to the law of the case, or to both. It may equally attach to, or widely vary in degree as between, the showing of the complainant and that of the defendant, without necessarily being determinative of the propriety of allowing or denying the injunction. Where, for instance, the effect of the injunction would be disastrous to an established and legitimate business through its destruction or interruption in whole or in part, strong and convincing proof of right on the part of the complainant and of the urgency of his case is necessary to justify an exercise of the injunctive power. Where, however, the sole object for which an injunction is sought, is the preservation of a fund in controversy, *Page 388 
or the maintenance of the status quo, until the question of right between the parties can be decided on final hearing, the injunction properly may be allowed, although there may be serious doubt of the ultimate success of the complainant. Its allowance in the latter case is a provisional measure, of suspensive effect and in aid of such relief, if any, as may finally be decreed to the complainant. These views are supported by abundant authority to which, were it not for the importance of the case, I should refrain from adverting. In Russell v. Farley, 105 U.S. 433,438; 26 L.Ed. 1060, the court through Mr. Justice Bradley, said:
"`It is a settled rule of the court of chancery, in acting on applications for injunctions, to regard the comparative injury which would be sustained by the defendant, if an injunction were granted, and by the complainant, if it were refused. Kerr Inj.209, 210. And if the legal right is doubtful either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party.'
"In The City of Newton v. Levis, 79 Fed. Rep. 715;25 C.C.A. 161, the circuit court of appeals for the eighth circuit through Judge Sanborn said:
"`The granting or withholding of a preliminary injunction rests in the sound judicial discretion of the court, and the only question presented by this appeal is whether or not the court below erred in the exercise of that discretion, under the established legal principles which should have guided it. The propriety of its action must be considered from the standpoint of that court. * * * The controlling reason for the existence of the right to issue a preliminary injunction is that the court may thereby prevent such a change of the conditions and relations of persons and property during the litigation as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated. When the questions to be ultimately decided are serious and doubtful, the legal discretion of the judge in granting the writ should be influenced largely by the consideration that the injury to the moving party will be certain, *Page 389 
great and irreparable if the motion is denied, while the inconvenience and loss to the opposing party will be inconsiderable, and may well be indemnified by a proper bond if the injunction is granted. A preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted. * * * The arguments and brief of counsel invite us to a consideration of the questions of law which must be finally determined upon a demurrer to the bill, or upon a final hearing of this case after answer. We have, however, found it unnecessary to decide these questions on this appeal, and we express no opinion upon them. They are of sufficient importance and difficulty to demand careful examination and deliberate consideration * * *.'
"In Glascott v. Lang, 3 Myl. C. 451, 455, Lord Chancellor Cottenham said:
"`In looking through the pleadings and the evidence, for the purpose of an injunction, it is not necessary that the court should find a case which would entitle the plaintiff to relief at all events. It is quite sufficient if the court finds, upon the pleadings, and upon the evidence, a case which makes the transaction a proper subject of investigation in a court of equity.'
"In Hadden v. Dooley, 74 Fed. Rep. 429, 431; 20 C.C.A. 494,
the circuit court of appeals for the second circuit through Judge Shipman said:
"`When the questions which naturally arise upon the transactions make them a proper subject for deliberate examination, if a stay of proceedings will not result in too great injury to the defendants, it is proper "to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined" by evidence and proofs which have the merit of accuracy.' *Page 390 
"In Great Western Railroad Co. v. Birmingham, c., RailroadCo., 2 Phil. Ch. 597, Lord Chancellor Cottenham said:
"`It is certain that the court will in many cases interfere and preserve property in statu quo during the pendency of a suit, in which the rights to it are to be decided, and that without expressing, and often without having the means of forming, any opinion as to such rights. It is true that no purchaser pendentelite would gain a title; but it would embarrass the original purchaser in his suit against the vendor which the court prevents by its injunction. * * * It is true that the court will not so interfere, if it thinks that there is no real question between the parties; but seeing that there is a substantial question to be decided, it will preserve the property until such question can be regularly disposed of. In order to support an injunction for such purpose, it is not necessary for the court to decide upon the merits in favor of the plaintiff. If, then, this bill states a substantial question between the parties, the title to the injunction may be good, although the title to the relief prayed may ultimately fail. Is, then, the case stated by the bill so clear in favor of the defendants, and so inadequate to support the relief prayed by the bill, as to justify the court in permitting it to be disposed of, and new titles or interests to be introduced, before any decision can be obtained upon the case so made?'
"In Shrewsbury and Chester Railroad Co. v. ShrewsburyRailroad Co., 1 Sim. N.S. *410, *426, *427, *432, the Vice-Chancellor, Lord Cransworth, said:
"`When the court is called on to interfere to preserve propertypendente lite, there are, I apprehend, two points on which the court must satisfy itself. First, it must satisfy itself, not that the plaintiff has, certainly, a right, but that he has a fair question to raise as to the existence of such a right. * * * Where it is made out that there is a point to be decided which the plaintiff is fairly raising, still there is a further question, namely, whether interim interference, on a balance of convenience and inconvenience to the one party and to the other, is or is not expedient. Where the alternative is interference or probable destruction of the *Page 391 
property, there, of course, the court will be very ready to lend its immediate assistance, even at considerable risk that it may be encroaching on what may eventually turn out to be a legal right of the defendant. But where, on the other hand, the only evil to result from non-interference is, that the plaintiff may, by the contracts or deeds of the defendant, be retarded or embarrassed in his litigation, there the court will be far more ready to listen to any suggestion of the defendant showing that interference during litigation will prejudice his rights. * * * Although I am perfectly satisfied of the authority of this court to issue an injunction, not merely to restrain parties from doing acts, but also from entering into contracts pending litigation that may embarrass the plaintiff in his suit, and that the court is entitled to do so whenever it sees there is a fair ground for litigation raised by the plaintiff, yet that right of the court must be guided by a discretion not to exercise it where it sees that on the balance of convenience and inconvenience betweeninterim interference and non-interim interference the balance greatly preponderates in favor of the defendant and against the plaintiff.'
"In the above case a preliminary injunction was refused on the ground of the `enormous preponderance of inconvenience in granting the injunction over any possible inconvenience in refusing it.' The doctrine of the foregoing case is contained in many others from which there is no occasion to quote. Denver andR.G. Railroad Co. v. United States, 124 Fed. Rep. 156;59 C.C.A. 579; Allison v. Corson, 88 Fed. Rep. 581; 32 C.C.A. 12;Buskirk v. King, 72 Fed. Rep. 22; 18 C.C.A. 418; SanitaryReduction Works v. California Reduction Co. (C.C.),94 Fed. Rep. 693; Southern Pacific Co. v. Earl, 82 Fed. Rep. 690;27 C.C.A. 185; New Memphis Gas and Light Co. v. Memphis (C.C.),72 Fed. Rep. 952; Indianapolis Gas Co. v. Indianapolis
(C.C.), 82 Fed. Rep. 245; Georgia v. Brailsford, 2 Dall.402; 1 L.Ed. 433.
"It does not appear, nor has it been claimed or intimated that the granting of the preliminary injunction asked for *Page 392 
would interfere with the operation of the Northern Pacific Railway Company and the Great Northern Railway Company, or either of them, or otherwise prove detrimental to the interests of the public."
Having given consideration to all the facts and circumstances surrounding the instant case, and applying thereto the principles of equity herein expounded, I feel there is ample justification for the appointment of a custodial receiver.